## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

The Ancientree Cabinet Co., Ltd.,

                  Plaintiff,

Craft33 Products, LLC,

                  Plaintiff,

      v.

United States,

                  Defendant,
    and

American Kitchen Cabinet Alliance

                  Defendant-Intervenor.

**Court No. 24-00223**
**Judge Richard K. Eaton**

## PLAINTIFF'S RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD

Pursuant to Rule 56.2 of the Rules of the United States Court of International Trade, Plaintiff Craft33 Products, LLC, ("Craft33" or "Plaintiff") respectfully moves for judgment on the agency record.  Craft33 challenges the U.S. Department of Commerce's ("Commerce") Final Results in the third administrative review of the countervailing duty ("CVD") order on wooden cabinets and vanities and components thereof from the People's Republic of China, Case No. C-570-107. *See Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: Final Results of Countervailing Duty Administrative Review; 2022,* 89 FR 88962 (Dep't Commerce Nov. 12, 2024) ("Final Results") and accompanying Issues and Decision Memorandum ("IDM"), dated Nov. 5, 2024.

Support for this motion is set forth in the Memorandum Of Points And Authorities (attached) and is incorporated by reference.  A proposed order is also attached.

WHEREFORE, Craft33 respectfully requests that this Court grant this motion, hold that Commerce's Final Results are unsupported by substantial evidence; arbitrary and capricious; and otherwise not in accordance with law; and should remand the proceeding to Commerce with instructions to revise Plaintiff's final assessment rate by deducting the full amount of 6.28 percent attributable to the Export Buyer Credit Program ("EBCP") from the final CVD assessment rate.

Respectfully,

Ronald J. Baumgarten
James K. Perry

Baker Hostetler LLP
Craft33 Products LLC

Dated: July 7, 2025

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| The Ancientree Cabinet Co., Ltd., | |
| Plaintiff, | |
| Craft33 Products, LLC, | |
| Plaintiff, | |
| v. | Court No. 24-00223 |
| United States, | Judge Richard K. Eaton |
| Defendant, | |
| and | |
| American Kitchen Cabinet Alliance | |
| Defendant-Intervenor. | |

## **PROPOSED ORDER**

Upon consideration of the Plaintiff's Rule 56.2 Motion for Judgment on the

Agency Record, and upon all other papers and proceedings herein, it is hereby,

**ORDERED** that Plaintiff's Rule 56.2 Motion for Judgment on the Agency Record

is granted; and it is further

**ORDERED** that this case be remanded to the U.S. Department of Commerce for

disposition consistent with the Court's final decision;

**SO ORDERED.**

_____
Judge Richard K. Eaton

Dated: _____, 2025
New York, New York

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RULE 56.2
MOTION FOR JUDGMENT ON THE AGENCY RECORD BY PLAINTIFF CRAFT33
PRODUCTS, LLC**

Ronald J. Baumgarten
James K. Perry

**Baker Hostetler LLP**
1050 Connecticut Ave., NW
Suite 1100
Washington, D.C.  20036

Counsel for Craft33 Products, LLC

Dated:  July 7, 2025

## TABLE OF CONTENTS

Contents

I.    INTRODUCTION .................................................................................................... 1

II.   RULE 56.2 STATEMENT ...................................................................................... 2

    A.  THE ADMINISTRATIVE DETERMINATION UNDER REVIEW .................................... 2

    B.  ISSUES ............................................................................................................ 2

III.  STATEMENT OF FACTS ....................................................................................... 3

IV.   SUMMARY OF ARGUMENT ................................................................................. 8

V.    STANDARD OF REVIEW ...................................................................................... 10

    A.  The Substantial Evidence Standard ............................................................... 11

    B.  Otherwise Not In Accordance With Law......................................................... 12

    C.  Arbitrary and Capricious ............................................................................... 13

VI.   ARGUMENT ......................................................................................................... 14

    A.  Commerce's Application of AFA to Craft33 Is Contrary to Law ..................... 14

    B.  Commerce Ignored Substantial Evidence of Craft33's Non-Use of the EBCP............ 16

    C.  Commerce Must Deduct the EBCP Rate From Craft33's Final Assessment Rate ....... 19

VII.  CONCLUSION ...................................................................................................... 23

# TABLE OF AUTHORITIES

## CASES

*Atlantic Sugar, Ltd. v. United States*, 744 F.2d 1556 (Fed. Cir. 1984) ........................... 15

*Changzhou Wujin Fine Chem. Factory Co. v. United States*, 701 F.3d 1367 (Fed. Cir. 2012) ....................................................................................................... 13, 26

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837 (1984)……………………………………………………………………………………..16

*Chr. Bjelland Seafoods AIS v. United States*, 19 Ct. Int'l Trade 35 (1995) .................... 16

*DAK Americas LLC v. United States*, 456 F. Supp. 3d 1340 (Ct. Int'l Trade 2020) ....... 18

*Dalian Meisen Woodworking Co., Ltd. v. United States*, 2025 Ct. Intl. Trade LEXIS 75, SLIP OP. 25-74 ................................................................................................................ 2

D*alian Meisen Woodworking Co., Ltd. v. United States,* 719 F. Supp. 3d 1322  (Ct. Int'l Trade 2024) ................................................................................................................... 1

*Dalian Meisen Woodworking Co., Ltd. v. United States*, No. 20-00110 (Ct. Int'l Trade) .. 4

*Dongbu Steel Co., Ltd. v. United States*, 635 F. 3d 1363 (Fed. Cir. 2011) .................... 18

*Gerald Metals, Inc. v. United States*, 132 F.3d 716 (Fed. Cir. 1997) ............................ 12

*GPX Int'l Tire Corp. v. United States*, 893 F. Supp. 2d 1296 (Ct. Int'l Trade 2015) ....... 19

*Guizhou Tyre Co. v. United States*, 348 F. Supp. 3d 1261 (Ct. Int'l Trade 2018) .......... 20

*Hartford Fire Ins. Co. v. United States*, 772 F.3d 1281 (Fed. Cir. 2014) ....................... 18

*Hoogovens Staal BV v. United States*, 4 F. Supp. 2d 1213 (Ct. Int'l Trade 1998) ......... 16

*Loper Bright v. Raimondo*, 144 S. Ct. 2244 (2024) ....................................................... 16

*Mid Continent Nail Corp. v. United States*, 846 F.3d 1364 (Fed. Cir. 2017) ................. 18

*Mitsubishi Materials Corp. v. United States*, 820 F. Supp. 608 (Ct. Int'l Trade 1993).... 15

*Mueller Comercial de Mex., S. de R.L. de C.V. v. United States*, 753 F.3d 1227 (Fed. Cir. 2014) .................................................................................................................... 26

*Nippon Steel Corp. v. United States*, 337 F.3d 1373 (Fed. Cir. 2003) ........................... 15

*Risen Energy Corp. v. United States*, 665 F. Supp. 3d 1335 (Ct. Int'l Trade 2023) ....... 19

U*niversal Camera Corp. v. N.L.R.B.*, 340 U.S. 474 (1951) ........................................... 12

*Western Conference of Teamsters v. Brock*, 709 F. Supp. 1159 (Ct. Int'l Trade 1989)  16

*Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370 (Fed. Cir. 2013) ................................................................................................................ 16

*Zhejiang DunAn Hetian Metal Co. v. United States*, 652 F.3d 1333 (Fed. Cir. 2011).... 15

## STATUTORY PROVISIONS

19 U.S.C. § 1516a(b)(1)(B) .............................................................................. 12

18 U.S.C. § 1001 ....................................................................................... 17, 22

19 U.S.C. § 1516a(b)(1)(B)(i) .......................................................................... 11

19 U.S.C. § 1677e(a) ...........................................................................passim

19 U.S.C. § 1677e(b). ...................................................................................... 14

19 U.S.C. § 1677m(i)(1)). ................................................................................ 21

5 U.S.C. § 706(2)(A)................................................................................... 11, 13

## REGULATORY PROVISIONS

19 C.F.R. § 351.308 ..................................................................................... 9, 14

## ADMINISTRATIVE DECISIONS

*Alkyl Phosphate Esters From People's Republic of China, Final Issues and Decision Memo, 2025 ITA Unpub LEXIS 527* ............................................................. 27

*Brake Drums From People's Republic of China, Final Issues and Decision Memo, 2025 ITA Unpub LEXIS 794* ................................................................................ 27

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules From People's Republic of China, Prelim Issues and Decision Memo, 2025 ITA Unpub LEXIS 256* ...................................................................................................... 28

*Decision Memorandum for the Preliminary Results of the Administrative Review of the Countervailing Duty Order on Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China; 2022; (Dept. of Commerce Apr. 26, 2024)* .... 8, 22

*Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 88 Fed. Reg. 38021 (Dep't of Commerce June 12, 2023) ................................................... 6

*Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: Countervailing Duty Order*, 85 Fed. Reg. 22134 (Dep't Commerce Apr. 21, 2020) ................................................................................................................ 4

Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: Final Affirmative Countervailing Duty Determination, 85 Fed. Reg. 11962 (Dep't Commerce Feb. 28, 2020) . .............................................................................................. 3

Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: Preliminary Results and Partial Rescission of Countervailing Duty Administrative Review; 2022, 89 Fed. Reg. 35782 (Dep't Commerce May 2, 2024) ............................. 9

Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: Final Results of Countervailing Duty Administrative Review; 2022, 89 Fed. Reg. 88,962 (Dep't Commerce Nov. 12, 2024) and accompanying Issues and Decision Memorandum ("IDM"), dated Nov. 5, 2024 ..................................................................... 2

I.      **INTRODUCTION**

Plaintiff Craft33 Products, LLC ("Craft33" or "Plaintiff") hereby submits the following Memorandum in accordance with Rule 56.2(c) of the Rules of the United States Court of International Trade.

By now, this Court is very familiar with the Export Buyer's Credit Program ("EBCP") of the Export-Import Bank ("Ex-Im Bank") of China. Normally, in a countervailing duty ("CVD") investigation or review, the U.S. Department of Commerce ("Commerce") examines subsidies that a foreign government allegedly has bestowed on mandatory respondents. Instead, in the case of the EBCP, Commerce has reviewed and countervailed a program that reportedly extended concessionary financing directly to the respondent's customers for the purchase of subject merchandise.

Craft33 is one of a number of American firms caught in the crossfire of Commerce's approach to the EBCP and the wider trade war with China. Despite substantial evidence showing non-use of the program, Craft33 is being penalized for the potential use of the EBCP by non-cooperating customers of the mandatory respondent, Plaintiff The Ancientree Cabinet Company, Ltd. ("Ancientree"). Craft33 has already, and at great expense, demonstrated the non-use of the EBCP in the underlying CVD investigation of wooden cabinets and components thereof from China, even hosting Commerce for verification. *See Dalian Meisen Woodworking Co., Ltd. v. United States*, 719 F. Supp. 3d 1322, 1330 (Ct. Int'l Trade 2024) ("*Dalian III*"). Craft33 also cooperated fully in the third review, submitting substantial documentary evidence proving again its non-use of the EBCP. Rather than make an adjustment for the non-use of the alleged

1

subsidy program,[1] Commerce has unlawfully applied the statute on adverse facts available ("AFA") and arbitrarily imposed CVD liability on Craft33, who never once used the program during any period of investigation or review.  This litigation is all the more frustrating as Commerce has persisted in the same policy, despite numerous court decisions and multiple remands.  Craft33 would ask the Court to correct the injustice inherent in Commerce's treatment and to reverse the Final Results as unsupported by substantial evidence and not in accordance with law.

II.    **RULE 56.2 STATEMENT**

    A.    **THE ADMINISTRATIVE DETERMINATION UNDER REVIEW**

    Plaintiff brings this action pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i)(I) and 19 U.S.C. § 1516a(a)(2)(B)(iii) to contest the Final Results of the third administrative review of the CVD order on wooden cabinets and vanities and components thereof from the People's Republic of China ("China"), Case No. C-570-107, issued by the International Trade Administration of the U.S. Department of Commerce. *See Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: Final Results of Countervailing Duty Administrative Review; 2022*, 89 Fed. Reg. 88,962 (Dep't Commerce Nov. 12, 2024) ("Final Results"), P.R. 340, and accompanying Issues and Decision Memorandum ("IDM"), dated Nov. 5, 2024, P.R. 336.

    B.    **ISSUES**

    Craft33 brings this challenge to resolve the following issues:

---

[1] In the appeal of the underlying investigation, this Court affirmed Commerce's decision on remand to make such an adjustment.  *See Dalian Meisen Woodworking Co., Ltd. v. United States* ("*Dalian IV*")*,* 2025 Ct. Intl. Trade LEXIS 75, SLIP OP. 25-74, at *47-*48.

1.      Whether Commerce failed to account for substantial record evidence of Craft33's non-use of the EBCP;

2.      Whether Commerce unlawfully applied AFA to Craft33 with respect to the EBCP, contrary to 19 U.S.C. § 1677e(a) and (b); and

3.      Whether Commerce unlawfully imposed a final countervailing duty assessment rate for Craft33's entries of subject merchandise during the period of review without deducting the full amount attributable to the EBCP.

## III.    **STATEMENT OF FACTS**

The CVD order on wooden cabinets and vanities and related components from the People's Republic of China ("China") was imposed pursuant to a final countervailing duty determination issued on February 28, 2020. *See Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: Final Affirmative Countervailing Duty Determination,* 85 Fed. Reg. 11962 (Dep't Commerce Feb. 28, 2020) ("Final Determination"). On April 21, 2020, Commerce published the CVD order in the *Federal Register. See Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: Countervailing Duty Order*, 85 Fed. Reg. 22134 (Dep't Commerce Apr. 21, 2020).  Mandatory respondent and producer of the subject merchandise, Ancientree, received a final CVD margin of 13.33 percent. *See* Final Determination, 85 Fed. Reg. at 11963.  Craft33 is one of Ancientree's U.S. customers and an importer of record of the subject merchandise.  The Final Determination was the subject of a related appeal pending before this Court. *See Dalian Meisen Woodworking Co., Ltd. v. United States*, No. 20-00110 (Ct. Int'l Trade) (filed May 19, 2020). Ancientree was not individually reviewed in the first and second administrative reviews;

3

Ancientree's final CVD liability in each of those reviews remained at 13.33 percent, which is the cash deposit rate as established in the Final Determination. *See Wooden Cabinets and Vanities and Components Thereof From the People's Republic of China: Preliminary Results of Countervailing Duty Administrative Review, Rescission and Intent to Rescind Administrative Review, in Part; 2019-2020*, 87 Fed. Reg. 27099, 27100-27101 (Dep't Commerce May 6, 2022); *Wooden Cabinets and Vanities and Components Thereof From the People's Republic of China: Preliminary Results of Countervailing Duty Administrative Review, Rescission of Administrative Review in Part, and Intent to Rescind; 2021*, 88 Fed. Reg. 29084, 29084-29086 (Dep't Commerce May 5, 2023). Liquidation of Ancientree's entries of subject merchandise during the first and second periods of review remains suspended due to statutory injunctions issued by this Court. *See Dalian Meisen Woodworking Co., Ltd. v. United States*, No. 20-00110, Order for Statutory Injunction Upon Consent, ECF #127 (Ct. Int'l Trade, Oct. 11, 2023).

Commerce initiated on June 12, 2023, the third administrative review of the CVD order on wooden cabinets and vanities and parts thereof from China. *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 88 Fed. Reg. 38021, 38033 (Dep't Commerce June 12, 2023), P.R. 28. The period of review ("POR") is January 1, 2022, through December 31, 2022.

Respondent Ancientree was the producer and exporter of the subject merchandise imported by Plaintiff during the POR. Commerce selected Ancientree as a mandatory respondent in the third review. *See* U.S. Dep't of Commerce, Memorandum, "Respondent Selection," dated August 16, 2023, P.R. 46, C.R. 7; *see also Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: Preliminary Results and Partial Rescission of Countervailing Duty Administrative*

*Review; 2022*, 89 Fed. Reg. 35782, 35782 (Dep't Commerce May 2, 2024) ("Preliminary Results"), P.R. 303.

In the third administrative review, Commerce examined a number of alleged subsidy programs, including China Ex-Im Bank's EBCP.  The Ex-Im Bank, through the EBCP, allegedly provides concessionary credits to qualifying importers of Chinese merchandise.  This program has been the focus of longstanding and ongoing litigation before this Court.  In these cases, also involving other subject merchandise imported from China, this Court has remanded to Commerce to correct the unlawful application of adverse facts available, or "AFA," to the EBCP.[2]

Craft33 is a wholly owned subsidiary of Famous Industries, Inc. of Akron, Ohio. *See* Craft33 Products, LLC, Form 13, *Craft33*, ECF #3.[3]  During the POR, Plaintiff was the importer of record for entries of subject merchandise that were manufactured in China by Ancientree.  The entries of the subject merchandise were all subject to a CVD cash deposit rate of 13.33 percent, which was the CVD margin set in the investigation. Of the total cash deposit rate, 10.54 percent was attributed to the EBCP based on AFA.  *See* Memorandum to File from Benito Ballesteros, International Trade Analyst, *Countervailing Duty Investigation of Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: Ancientree Final Determination Calculation Memorandum*, dated Feb. 21, 2020 (DOC Barcode: 3947537-01).

Ancientree submitted certificates of non-use of the EBCP on behalf of its unaffiliated U.S. customers, including the Plaintiff, in the third administrative review on

---

[2] *See* Part VI.A, *infra.*

[3] Famous Enterprises, Inc., in turn, owns 100 percent of Famous Industries, Inc.

October 19, 2023.  *See* AT IRQ at 19-20 & Exh. 15 (Oct. 19, 2023), P.R. 105, C.R. 41; *see also Decision Memorandum for the Preliminary Results of the Administrative Review of the Countervailing Duty Order on Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China; 2022*, dated Apr. 26, 2024 ("PDM") at 19, P.R. 294.

Commerce also issued an "EBC Supplemental Questionnaire" to Ancientree's U.S. customers, including Craft33, requesting additional information regarding all their financing activities during the POR.  *See* PDM at 19, P.R. 294.  Craft33, among several other Ancientree customers, completed this burdensome questionnaire, and Ancientree collectively submitted the customers' responses on February 29, 2024.  *See* Ancientree EBC Supp. QR (Feb. 29, 2024), at Exh. 7 (Customer L), P.R. 173, C.R. 103.

Commerce issued the Preliminary Results of the third administrative review on May 2, 2024. *See Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: Preliminary Results and Partial Rescission of Countervailing Duty Administrative Review; 2022*, 89 Fed. Reg. 35782 (Dep't Commerce May 2, 2024) ("Preliminary Results"), P.R. 303.  Ancientree received a preliminary CVD rate of 14.23 percent.  *See id.* at 35783, P.R. 303.

As part of the Preliminary Results, Commerce noted that Ancientree had not provided EBC questionnaire responses for all customers and further that the Government of China had not cooperated in furnishing relevant information on the EBCP to Commerce. *See* PDM at 17-19, P.R. 294.  Consequently, Commerce applied AFA to the EBCP pursuant to 19 U.S.C. § 1677e(a) and (b) and preliminarily calculated a 6.28 percent margin for the EBCP.  *See* Memorandum to John McGowan, Program Manager, from Suresh Maniam, International Trade Compliance Analyst, *Preliminary Result*

*Calculations for The Ancientree Cabinet Co. Ltd.*, dated Apr. 26, 2024, at 1, P.R. 299, C.R. 172. Ancientree received no reduction in the preliminary rate despite substantial record evidence demonstrating non-usage during the POR by at least some customers, including Craft33.

Craft33 timely entered a notice of appearance in the third administrative review on May 17, 2024. *See* Craft33 Products, LLC, Notice of Appearance, dated May 17, 2024, P.R. 305. Ancientree filed a case brief with Commerce on June 3, 2024, arguing that the record before Commerce demonstrated that Ancientree neither used nor benefited from the EBCP; however, Commerce disregarded evidence on the record supplied by Ancientree and on behalf of its customers, including statements of non-use of the EBCP. *See* Ancientree Case Brief, dated June 3, 2024, at 4-8 ("Ancientree Case Br."), P.R. 316, C.R. 177. Ancientree further argued that Commerce "should set up customer specific rates for the case, with no EBC program included in the rate for the customers that were successfully verified for non-use." *Id.* at 7, R.R. 316, C.R. 177.

Plaintiff filed a Letter in Lieu of Case Brief on June 3, 2024. *See* Craft33 Products, LLC, Letter in Lieu of Case Brief, dated June 3, 2024 ("Letter ILO Case Br."), P.R. 313. In the letter, Craft33 expressed support for the arguments made in Ancientree's Case Brief, including those related to customers' non-use of the EBCP. *See id.* at 2, P.R. 313. Plaintiff further explained:

> Craft33 certified as to its non-use of this program during the {POR} and completed a response to the Department's supplemental questionnaire on this program. Craft33 takes this opportunity to reiterate that it has never, whether during this POR or otherwise, applied for, had access to, or received credit or any other financial support or assistance from the Export-Import Bank of China. *Id.*, P.R. 313.

On October 24, 2024, Plaintiff's counsel met via video teleconference with Commerce to discuss the applicability of related developments in U.S. Court of International Trade jurisprudence.  Commerce subsequently submitted a memorandum to the file summarizing this meeting with Plaintiff's counsel. *See* Memorandum to File from John McGowan, Program Manager, *2022 Countervailing Duty Administrative Review of Wooden Cabinets and Vanities and Components Thereof from China: Craft33 Conversation,* dated Oct. 24, 2024, P.R. 333.

Commerce published the Final Results in the Federal Register on November 12, 2024.  Craft33 timely commenced an action by filing with this Court a Summons on December 11, 2024.  *See* Summons, *Craft33 Products, LLC v. United States* ("*Craft33*"), Court. No. 24-00224 (Dec. 11, 2024), ECF #1.  Plaintiff's Complaint was timely filed within 30 days of the Summons. *See* Complaint (Jan. 9, 2025), *Craft33*, ECF #9.  Defendant-Intervenor American Kitchen Cabinet Alliance ("AKCA") moved to intervene in *Craft33* on February 10, 2025, ECF# 14, and the Court granted said motion on February 11, 2025, ECF #19.  Following several extensions of the deadline, the Parties filed a Joint Status Report ("JSR"), ECF #26, with this Court on May 15, 2025, expressing their consent to the consolidation of *Craft33* with the present appeal, Court No. 24-00223. The Defendant United States filed a Motion to Consolidate, ECF #29, the *Craft33* case with this action on May 22, 2025.   The Court granted the motion to consolidate on May 27, 2025, ECF #30.

## IV.    SUMMARY OF ARGUMENT

Commerce's decision to countervail the EBCP in the case of Craft33 is inconsistent with the CVD law on the application of AFA.  The Tariff Act at 19 U.S.C. §

1677e specifies the conditions under which Commerce may resort to "facts available," and imposes additional requirements to apply "adverse factual inferences." Commerce has adopted regulations implementing these requirements. *See* 19 C.F.R. § 351.308.

Commerce's treatment of the EBCP in countervailing duty investigations and administrative reviews has been the focus of extensive litigation before this Court. *See, e.g., Dalian III*, 719 F. Supp. 3d 1322 (Ct. Int'l Trade 2024).   In cases where Commerce determines that the Government of China ("GOC") failed to provide sufficient information on the EBCP, this Court has declined to uphold Commerce's application of AFA as to importers that have demonstrated non-use of the EBCP through record evidence.  *See id.* at 1337-38.  Craft33 demonstrated that it never used the EBCP during the POR, but Commerce, disregarding existing jurisprudence, unlawfully applied AFA to Craft33's final company-specific assessment rate.

This Court applies the "substantial evidence" standard of review to Commerce's failure to account for Plaintiff's record evidence of non-use.  *See Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 487–88 (1951); *Gerald Metals, Inc. v. United States*, 132 F.3d 716, 720 (Fed. Cir. 1997).  Commerce's inconsistent treatment of record evidence demonstrating Plaintiff's non-use of the EBCP is also reviewed under the "arbitrary and capricious" standard.  *See, e.g., Changzhou Wujin Fine Chem. Factory Co. v. United States*, 701 F.3d 1367, 1374 (Fed. Cir. 2012).

Craft33 submitted evidence to the record of its non-use of the EBCP, including a non-use certification signed by a company official under penalty of law, and complete and comprehensive answers to Commerce's EBC Supplemental Questionnaire in the third countervailing duty administrative review.  *See* Part VI.B.   In this administrative

9

review, Commerce ignored this evidence and imposed a final countervailing duty assessment rate of 11.99 percent on Plaintiff, of which 6.28 percent is attributable to the EBCP. The Final Results are therefore unsupported by substantial evidence.

In the appeal of the underlying countervailing duty investigation, pursuant to the third remand from this Court, Commerce deducted the entire amount of alleged subsidy attributable to the EBCP from Craft33's final countervailing duty rate.  *See Final Results of Redetermination to Court Remand, Dalian Meisen Woodworking Co., Ltd. v. United States,* Court No. 20-00110, Slip Op. 24-83 (Ct. Int'l Trade Jul. 22, 2024), dated Nov. 12, 2024 (DOC Barcode: 4663176-01).  The Court, subsequent to this appeal, sustained Commerce's redetermination.  *See Dalian IV,* 2025 Ct. Intl. Trade LEXIS 75, at *47-*48.  Commerce's failure to make the same adjustment in the third review constitutes inconsistent treatment of non-use of the EBCP and hence should be found arbitrary and capricious and otherwise not in accordance with law.

Courts have required downward adjustments to final, company-specific CVD rates where record evidence has demonstrated non-use of the EBCP.  This Court should require Commerce to revise Craft33's final assessment rate by deducting the full amount of 6.28 percent attributable to the EBCP based on record evidence of non-use in the administrative review.

## V.    STANDARD OF REVIEW

This Court is to review Commerce's Final Results under 19 U.S.C. § 1516a(b)(1)(B)(i), which provides that the reviewing court "shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law."  The Court may also

declare Commerce's actions "arbitrary, and capricious" under the Administrative Procedures Act ("APA"), 5 U.S.C. § 706(2)(A).

## A.    The Substantial Evidence Standard

To comply with the "substantial evidence" standard, Commerce must base its determination upon "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Zhejiang DunAn Hetian Metal Co. v. United States,* 652 F.3d 1333, 1340 (Fed. Cir. 2011) (quoting *Nippon Steel Corp. v. United States,* 337 F.3d 1373, 1379 (Fed. Cir. 2003)).  A determination supported by substantial evidence "requires more than mere assertion of 'evidence which in and of itself justified {the determination}, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn." *Gerald Metals, Inc.,* 132 F.3d at 720 (quoting *Universal Camera Corp.*, 340 U.S. at 487); *see also Atlantic Sugar, Ltd. v. United States,* 744 F.2d 1556, 1562 (Fed. Cir. 1984).  Thus, in assessing whether evidence is "substantial," Commerce must consider the "record in its entirety," including "the body of evidence opposed to the {agency's} view."  *Universal Camera,* 340 U.S. at 488.  Commerce cannot "simply ignore significant contradictory evidence and assert that, nevertheless, its determination was supported by substantial evidence." *Mitsubishi Materials Corp. v. United States,* 820 F. Supp. 608, 624 (Ct. Int'l Trade 1993).  Rather, evidence that detracts from the weight of the evidence relied upon by Commerce must also factor into its analysis and conclusions. *See, e.g., Universal Camera,* 340 U.S. at 488; *Atlantic Sugar,* 744 F.2d at 1562.

To satisfy the "substantial evidence" standard, Commerce must provide an adequate explanation for its conclusions and there must be a rational connection

between the facts in the record and the choice made by Commerce in its determination. *See, e.g., Hoogovens Staal BV v. United States,* 4 F. Supp. 2d 1213, 1219 (Ct. Int'l Trade 1998) (citing *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 168 (1962)); *Western Conference of Teamsters v. Brock,* 709 F. Supp. 1159, 1163 (Ct. Int'l Trade 1989). Commerce may not premise its determination on inadequate analysis or reasoning. *See, e.g., Chr. Bjelland Seafoods AIS v. United States,* 19 Ct. Int'l Trade 35, 37 (1995). Nor can it rest a determination on "mere conjecture or supposition." *Yangzhou Bestpak Gifts & Crafts Co. v. United States,* 716 F.3d 1370, 1378 (Fed. Cir. 2013).

## B.    Otherwise Not In Accordance With Law

This Court must also decide whether the Final Results are "otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B). Federal courts, until recently, applied the standard of review under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) ("*Chevron*") as to questions of Commerce's statutory interpretation. In *Loper Bright v. Raimondo,* 144 S. Ct. 2244 (2024), the U.S. Supreme Court overruled *Chevron,* upending over 40 years of administrative law. This Court is called to apply the *Loper Bright* standard when reviewing the lawfulness of the present remand redetermination:

> Courts must exercise their independent judgment in deciding whether
> an agency has acted within its statutory authority, as the APA[4]
> requires. Careful attention to the judgment of the Executive Branch

---

[4] 5 U.S.C. § 551 *et seq. Loper Bright's* holding is not limited to judicial review in cases brought under the APA. This appeal arises under 19 U.S.C. § 1516a which requires the Court to remand agency determinations as "not in accordance with law" when they do not adopt the correct legal interpretation of the statute. This "not in accordance with law" standard is the same standard applied in APA cases. *See, e.g., NSK Corp. v. Int'l Trade Comm'n*, 542 Fed. Appx. 950, 953 (Fed. Cir. 2013).

may help inform that inquiry. And when a particular statute delegates authority to an agency consistent with constitutional limits, courts must respect the delegation, while ensuring that the agency acts within it. But courts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous. *Loper Bright,* 144 S. Ct. at 2273.

*Loper Bright* is clear that the courts have the final word as to what the law requires: "It … makes no sense to speak of a 'permissible' interpretation that is not the one the court, after applying all relevant interpretive tools, concludes is best. In the business of statutory interpretation, if it is not the best, it is not permissible." *Id.* at 2266.

Courts are to review statutes to determine their congressionally intended meaning.  Using recognized canons of statutory construction, ambiguities are resolved by the courts, and such canons include the "ordinary meaning" canon (plain language and dictionary definitions of statutory terms); the whole-text and surplusage canons (the text must be understood as a whole, giving effect to every word); and the harmonious reading canon (text provisions should be construed for compatibility, not contradiction); among others.

### C.    Arbitrary and Capricious

Commerce's authority is also circumscribed by the requirements of APA forbidding agency action that is "arbitrary and capricious."  5 U.S.C. § 706(2)(A); *see also Mid Continent Nail Corp. v. United States*, 846 F.3d 1364 (Fed. Cir. 2017).  Under this standard, Commerce is required to examine relevant data and articulate a satisfactory explanation for its action, including a "rational connection between the facts found and the choice made."  *See, e.g., DAK Americas LLC v. United States*, 456 F. Supp. 3d 1340, 1352 (Ct. Int'l Trade 2020) (citing *Burlington Truck Lines, Inc.*, 371 U.S. at 168).

Commerce may not treat similar situations in an inconsistent manner: "An agency action is arbitrary when the agency offers insufficient reasons for treating similar situations differently." *Dongbu Steel Co., Ltd. v. United States*, 635 F. 3d 1363, 1371 (Fed. Cir. 2011).

An agency determination is unsustainable if "there has been a clear error of judgment," that is, "a clear error of judgment occurs when an action is 'arbitrary, fanciful, or clearly unreasonable.'" *Hartford Fire Ins. Co. v. United States*, 772 F.3d 1281, 1286 (Fed. Cir. 2014)(citation omitted). The failure to meet these requirements would render Commerce's decision arbitrary and capricious and, thus, not in accordance with law.

## VI.    ARGUMENT

### A.    Commerce's Application of AFA to Craft33 Is Contrary to Law

Craft33's assessment rate is based on an erroneous interpretation of the law on facts available, and one with which this Court is all too familiar. The Tariff Act specifies the conditions under which Commerce may resort to "facts available," and imposes additional requirements to apply "adverse factual inferences." 19 U.S.C. § 1677e(a); 19 U.S.C. § 1677e(b). Commerce has adopted regulations implementing these requirements. *See* 19 C.F.R. § 351.308.

A foreign government's failure to provide Commerce with "necessary information" pertaining to a government program does not automatically justify resort to AFA in countervailing duty investigations and reviews. 19 U.S.C. § 1677e(a)(1). As this Court has held, "When Commerce has access to information on the record to fill in the gaps created by the lack of cooperation by the government, as opposed to the exporter/producer . . . it is expected to consider such evidence." *Risen Energy Corp. v.*

14

*United States*, 665 F. Supp. 3d 1335, 1341-42 (Ct. Int'l Trade 2023) (quoting *GPX Int'l Tire Corp. v. United States*, 893 F. Supp. 2d 1296, 1332 (Ct. Int'l Trade 2015)). Moreover, "{u}se of AFA is only appropriate where information is otherwise not available on the record, and should not be used 'simply to punish' a non-cooperative party." *Id.* at 1342 (quoting *Guizhou Tyre Co. v. United States*, 348 F. Supp. 3d 1261, 1270 (Ct. Int'l Trade 2018)).

In this administrative review, Commerce concluded that the Government of China's failure to provide relevant documents on the EBCP, including regulatory changes to the program from 2013, amounted to a "failure to cooperate," and dismissed attempts by Ancientree to cure any deficiencies through non-use certificates and the completion of supplemental questionnaires. *See* IDM at 15-17, P.R. 336.  Commerce therefore found that the "the use of AFA is warranted" and countervailed the EBCP at 6.28 percent.  *Id.* at 15, P.R. 336; Ancientree Final Calculations Memorandum ("AT Final Calc. Memo"), at Att. 1, P.R. 338, C.R. 184.

Commerce's treatment of the EBCP in countervailing duty investigations and administrative reviews has been the focus of extensive litigation before this Court. *See, e.g., Dalian III*, 719 F. Supp. 3d at 1322; *Risen Energy Corp.*, 665 F. Supp. 3d at 1335. In cases where Commerce determines that the Government of China failed to provide sufficient information on the EBCP, this Court has declined to uphold Commerce's application of AFA as to importers who demonstrated non-use of the EBCP through verified record evidence.  *See, e.g., Dalian III,* 719 F. Supp. 3d at 1336-37 ("Since no gap was created, with respect to these sales, the use of facts available (let alone an adverse inference) was not directed by statute. Indeed, the requirement of the use of verified information for an investigation determination directs the opposite result.").

In the appeal of the underlying investigation, the Court recently sustained Commerce's redetermination on remand, which implemented the Court's direction to recalculate the rates of importers who had demonstrated non-use, including Craft33. *See Dalian IV,* 2025 Ct. Intl. Trade LEXIS 75, at \*54-\*61.  The Court, in rejecting the Petitioner's request for another remand, found:

> {W}ith respect to certain of Ancientree's customers, not only was the use of adverse facts available not supported, but even the use of neutral facts available was not supported by substantial evidence because non-use was actually demonstrated by the evidence on the record. For those of Ancientree's customers where that was done, there were no gaps in the record.  *Id.* at \*56.

Commerce would have this Court affirm an unlawful approach to AFA – one that disregards persuasive legal authority and contradicts a subsequent court opinion involving the exact same CVD order. Commerce in the third review applied AFA to Craft33's final assessment rate, even though Craft33 and Ancientree had demonstrated through substantial evidence that Craft33 never used the EBCP during the period of review.  On this record, the law does not permit Commerce to use AFA to impose duties on an importer for a program that the importer never used.

Craft33 refers this Court to further discussion on the law concerning AFA in Plaintiff Ancientree's R. 56.2 Brief and hereby incorporates by cross-reference the legal arguments that Commerce's decision to countervail the EBCP was inconsistent with 19 U.S.C. § 1677e(a) and (b).

## B.    Commerce Ignored Substantial Evidence of Craft33's Non-Use of the EBCP

To paraphrase the late Senator Daniel Patrick Moynihan, Commerce is entitled to its own opinion, but facts matter.  Craft33 participated in the third review from the start, either through Ancientree or directly after filing an entry of appearance.  Craft33

complied with all of Commerce's requests for information on the EBCP and even approached Commerce to explain its situation prior to the issuance of the Final Results. Commerce, instead, chose to disregard significant record evidence proving Craft33's non-use of the EBCP. Commerce's failure to adjust Craft33's assessment rate to reflect this reality has left an importer of record owing more than the government is entitled to collect.

The record contains significant documentation concerning Craft33's non-use of the EBCP. Craft33, under penalty of law, provided a non-use certification to be included in Ancientree's Initial Questionnaire Response. *See* AT IRQ at 19-20 & Exh. 15 (Oct. 19, 2023), P.R. 105, C.R. 41; 18 U.S.C. § 1001 (establishing criminal penalties for making false and fraudulent statements to the U.S. Government); *see also* PDM at 19, P.R. 294.

Craft33, via Ancientree's submission, provided complete and comprehensive answers to Commerce's EBC Supplemental Questionnaire in the third countervailing duty administrative review. *See* Ancientree EBC Supp. QR (Feb. 29, 2024), at Exh. 7 (Customer L), P.R. 173, C.R. 103. Craft33's responses to that supplemental questionnaire demonstrated that it never had access to nor otherwise participated in the EBCP. Craft33 provided Commerce with a completed loan template for the POR, detailed information on the credit arrangements for its business, letters from both its longtime lender and third-party auditor attesting to the non-use of the EBCP, company financial statements, general ledger account entries, and a copy of the relevant lending agreement. This evidence, provided at significant effort and expense by Craft33, and consisting of sensitive proprietary data, established the clear absence of any linkage of

Craft33's borrowing to the EBCP for financing the importation or purchase of any products, including subject merchandise.

Following the issuance of the Preliminary Results, Craft33 filed on June 3, 2024, a Letter in Lieu of Case Brief ("LILO Case Br."), P.R. 313.  Aside from expressing support for the arguments made by Ancientree as to the non-use of the EBCP, Craft33 noted the evidence it had submitted on non-use of the program and "t{ook} this opportunity to reiterate that it has never, whether during this POR or otherwise, applied for, had access to, or received credit or any other financial support or assistance from the Export-Import Bank of China."  *Id.*, P.R. 313.  Craft33 asked Commerce to find that Ancientree did not benefit from the EBCP, or alternatively, to find no benefit was received by those Ancientree customers who had demonstrated non-use of the program.  The letter also urged Commerce to make a downward adjustment to the Craft33's final assessment rate to account for its non-use.

On October 24, 2024, counsel to Craft33 met with Commerce to discuss "Commerce's treatment of the Export Buyer's Credit program in this proceeding and the litigation related to prior segments of this proceeding."  Memorandum from John McGowan to the File, 2022 Countervailing Duty Administrative Review of Wooden Cabinets and Vanities and Components Thereof from China: Craft33 Conversation (Oct. 24, 2024) ("*Ex parte* Memo"), P.R. 333.  This meeting represented a good-faith effort by Craft33 to reiterate arguments from its LILO Case Brief concerning record evidence on its non-use of the EBCP and to urge the appropriate adjustment to its final assessment rate.

Commerce "cannot simply ignore significant contradictory evidence" on the record. *Mitsubishi Materials Corp.,* 820 F. Supp. at 624.  Here, despite the extensive

18

evidence of Craft33's non-use of the EBCP, Commerce applied AFA and countervailed the program in full as to Craft33.  *See* IDM at 16-17, P.R. 336.  As Commerce concluded, "we continue to find that the GOC has not cooperated to the best of its ability in response to Commerce's specific information requests, and respondents' voluntary attempts to cure record deficiencies resulting from the GOC's lack of full cooperation are incomplete and insufficient." *Id.*  Commerce's decision to penalize Craft33 for the benefits of a program it never used is unsupported by substantial evidence and not in accordance with the law.  Moreover, Commerce has made "a clear error of judgment" in considering the record evidence, *Hartford Fire Ins. Co.,* 772 F.3d at 1286, and hence its decision to impose duty liability on Craft33 for the EBCP is arbitrary, capricious, and otherwise not in accordance with law.

### C.    Commerce Must Deduct the EBCP Rate From Craft33's Final Assessment Rate

Given the existence of substantial evidence on Craft33's non-use of the EBCP, Commerce should have made an adjustment to Craft33's final assessment rate in the third review of the CVD order, just as it had done to Craft33's rate in the remand redetermination pursuant to court order.  *See Final Results of Redetermination to Court Remand, Dalian Meisen Woodworking Co., Ltd. v. United States,* Court No. 20-00110, Slip Op. 24-83 (Ct. Int'l Trade Jul. 22, 2024), dated Nov. 12, 2024 (DOC Barcode: 4663176-01); *see also Dalian IV,* 2025 Ct. Intl. Trade LEXIS 75, at *28-*30.[5]   As this Court said in *Dalian IV*, when upholding the use of company-specific rates for

---

[5] Craft33 is voluntarily disclosing that it is identified as "Customer L" in the underlying investigation, as in the third review.

cooperating companies, including Craft33, "there is a great deal of law discouraging the use of the failure of a third party (such a China) to comply with questionnaires as a basis for applying adverse facts available." *Id.* at *58-*59 (citing *Mueller Comercial de Mex., S. de R.L. de C.V. v. United States*, 753 F.3d 1227, 1235 (Fed. Cir. 2014); *Changzhou Wujin Fine Chem. Factory Co. v. United States*, 701 F.3d 1367, 1378 (Fed. Cir. 2012); Risen *Energy, Co. v. United States,* 724 F. Supp. 3d 1356, 1361 (Ct. Int'l Trade 2024)).

In the third review of the order of *Wooden Cabinet and Vanities,* Commerce ultimately calculated a CVD rate of 11.99 percent for Ancientree. *See* Final Results, 89 Fed. Reg. at 88963, P.R. 340. Of this amount, 6.28 percent is attributable to the EBCP. *See* AT Final Calc. Memo at Att. 1, P.R. 338, C.R. 184. Craft33, having demonstrated non-use of that program, should have the full amount deducted from its final assessment rate, meaning that countervailing duties would be assessed at 5.71 percent upon liquidation.[6]

The United States or Defendant-Intervenor may object that the evidence of non-use by Craft33 must be verified as in the underlying investigation. As this Court has recognized in the context of the EBCP, however, administrative reviews and investigations are different with respect to verification. *See Dalian IV,* 2025 Ct. Intl. Trade LEXIS 75, at *10-*11 ("It bears repeating that, unlike in reviews, in investigations Commerce is directed by statute to verify 'all information relied upon in making . . . a final determination.'") (citing 19 U.S.C. § 1677m(i)(1)). Although "{v}erification is

---

[6] Although unlikely, should the percentage of the final assessment rate attributable to the EBCP change in any way as a result of this appeal and/or subsequent remand, Commerce should deduct the full amount from Craft33's final assessment rate.

undefined by the statute, and the statute does not describe what processes Commerce should use to verify information," *Risen Energy, Co.,* 724 F. Supp. 3d at 1342,[7] Commerce's exercise of discretion remains subject to the same standard of review.

In *Risen Energy,* the Court considered verification in the context of an administrative review involving the EBCP.  The respondent Risen had cooperated with Commerce, providing non-use certificates and backup financial data from its customers.  Commerce, exercising discretion under the statute, declined to undertake verification due to another customer's non-cooperation.  The Court found that Commerce had not attempted even a "reasonable level of verification" for those parties who had provided evidence of non-use and questioned the necessity for further in-person verification by Commerce.  *Risen Energy, Co.,* 724 F. Supp. 3d at 1342.  The Court held:

> Both the nonuse certificates and the financial records produced by the third-parties represent evidence of non-use that supports Risen's own statement that its sales were not involved in the EBCP program. No evidence presented to the court suggests that these statements are not punishable under 18 U.S.C. § 1001 if either Risen or a customer is lying.  Commerce, nonetheless, sought to complete burdensome verification procedures presumably in order to determine whether or not the statements are true. Commerce has presented no evidence to the court that these companies are lying about their financials.  Commerce has presented no evidence to indicate that the companies do not know what they are talking

---

[7] Since the time of the third review, Commerce has modified its practice as to verification of non-use of the EBCP, taking into account related court decisions and experience with the program. *See, e.g., Brake Drums From People's Republic of China*, Final Issues and Decision Memo, 2025 ITA Unpub LEXIS 794 at *47-*55 ("Commerce determines that usage of the EBCP can be determined through the books and records of a cooperative respondent. . . ."); *Alkyl Phosphate Esters From People's Republic of China*, Final Issues and Decision Memo  2025 ITA Unpub LEXIS 527, at *35-*42 (same). Craft33 presumes that should Commerce be afforded discretion to undertake verification on remand from this appeal, it will conduct such verification at the respondent-level (*i.e.,* Ancientree).

about. At this stage, every piece of evidence presented to Commerce and to the court supports the conclusion that Risen's sales were not aided by the EBCP. In the face of substantial evidence of non-use from Risen and its customers, and no evidence of use supported by actual evidence or any reasonable AFA inference, *Commerce must not include a subsidy amount for EBCP. Id.* at 1343-44 (emphasis added).

Craft33, like the cooperating customers in *Risen Energy*, provided a non-use certificate, as well as pertinent financials. The rationale for deducting the EBCP amount from the final CVD rate applies equally to Craft33 in this case. *Id.* at 1333-34.[8] Commerce's refusal to make this adjustment to Craft33's final assessment rate is unsupported by substantial evidence and contrary to the requirements of the AFA statute.[9]

Commerce's treatment of Craft33 was also arbitrary and capricious. As noted, on remand in the appeal of the underlying investigation, Commerce provided an adjusted final assessment rate to Craft33 and other customers who had proven non-use. Commerce, on similar evidence and aware of its legal obligations under the statute, refused this modification for Craft33 in the third review; the Final Results offer no

---

[8] Commerce itself has found non-use of the EBCP in reviews without on-site verification of the program. *See, e.g., Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules From People's Republic of China*, Prelim Issues and Decision Memo, 2025 ITA Unpub LEXIS 256, at *256 ("Light Energy reported that the program was not used by Yingli China or their U.S. importer during the POR and explained the basis for their conclusions, and the record includes supporting documentation demonstrating nonuse. Therefore, Commerce preliminarily finds the EBCP not used by Light Energy during the POR.").

[9] Craft33 was the subject of a successful and burdensome in-person EBCP verification in connection with the appeal of the underlying investigation. *See Dalian IV,* 2025 Ct. Intl. Trade LEXIS 75, at *29-*30; *Dalian III,* 719 F. Supp. 3d at 1330-32. As this Court has recognized, "asking a private entity with no legal obligation... to allow government officials to inspect its records is asking for something that can be both expensive and time-consuming." *Risen Energy,* 724 F. Supp. 3d at 1342.

rationale for "treating these similar situations differently," nor is there one. *Dongbu Steel Co., Ltd.* 635 F. 3d at 1371. This Court should hold Commerce's decision to impose the full CVD margin on Craft33 as arbitrary and capricious, and hence not in accordance with law.

## VII.   CONCLUSION

For the reasons set forth in this Memorandum of Points and Authorities, Craft33 respectfully requests that this Court:

1.   Enter judgment in favor of Craft33;

2.   Hold that those portions of the Final Results that are the subject of this appeal are unsupported by substantial evidence, arbitrary and capricious, and otherwise not in accordance with law;

3.   Find that Craft33 did not use the EBCP during the POR, and hence, remand this proceeding to Commerce with instructions to adjust Craft33's final CVD assessment rate by deducting the full amount attributed to the EBCP (6.28 percent), from the final CVD margin applicable to Craft33; and

4.   Grant Craft33 such additional relief as the Court may deem just and proper.

Respectfully submitted,

Ronald J. Baumgarten
James K. Perry

Baker Hostetler LLP
Counsel to Craft33 Products, LLC

Dated: July 7, 2025

23

## CERTIFICATE OF COMPLIANCE

Pursuant to U.S. Court of International Trade Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement. The word count for Craft33 Products', LLC, Memorandum in Support of Rule 56.2 Motion for Judgment on the Agency Record, as computed by Baker Hostetler's word processing system (Microsoft Word Version 2503), is 6,500 words.

_____
Signature of Attorney

**Ronald Baumgarten**
Name of Attorney

**Craft33 Products, LLC**
Representative Of

**July 7, 2025**
Date