# UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE RICHARD K. EATON, JUDGE

| | |
|---|---|
| THE ANCIENTREE CABINET CO., LTD )<br>Plaintiff, )<br> )<br>and )<br> )<br>CRAFT33 PRODUCTS, LLC, )<br>Consolidated-Plaintiff, )<br>v. )<br> )<br>UNITED STATES, )<br>Defendant. )<br> )<br>and )<br> )<br>AMERICAN KITCHEN CABINET ALLIANCE, )<br>Defendant-Intervenor ) | Consol. Court No. 24-223 |

**ORDER**

Pursuant to Rule 56.2 of the Rules of the United States Court of International Trade

("USCIT R."), Plaintiff The Ancientree Cabinet Co., Ltd., in support of its Rule 56.2 Motion for

Judgment on the Agency Record, and all other papers and proceedings had herein, it is hereby

ORDERED that said motion is GRANTED, and it is further

ORDERED that this case is remanded to Department of Commerce with instructions that

the Department redetermine aspects of its investigation as instructed by this Court in its

accompanying slip opinion.


DATED: _____          _____
       New York, New York                Richard K. Eaton, Judge

BEFORE: THE HONORABLE RICHARD K. EATON, JUDGE

| | | |
|---|---|---|
| THE ANCIENTREE CABINET CO., LTD | ) | |
| Plaintiff, | ) | |
| | ) | |
| and | ) | Consol. Court No. 24-223 |
| | ) | |
| CRAFT33 PRODUCTS, LLC, | ) | |
| Consolidated-Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES, | ) | |
| Defendant. | ) | |
| | ) | |
| and | ) | |
| | ) | |
| AMERICAN KITCHEN CABINET ALLIANCE, | ) | |
| Defendant-Intervenor | ) | |

## PLAINTIFF'S MOTION FOR JUDGMENT ON THE AGENCY RECORD

Pursuant to Rule 56.2 of the Rules of the United States Court of International Trade ("USCIT R."), Plaintiff The Ancientree Cabinet Co., Ltd., respectfully moves this Court for an order granting movants judgment on the agency record against Defendant, the United States (representing the U.S. Department of Commerce), including, but not limited to the following relief:

- Declaring that the Department's application of adverse facts available ("AFA") to the China Ex-Im Bank's Export Buyer's Credit Program ("EBC" program or "EBCP") is not supported by substantial evidence and is otherwise contrary to the law; and

- Declaring that the Department's determination to apply AFA and find use of the EBCP with respect to the customers that provided EBC supplemental questionnaire responses was not supported by substantial evidence, arbitrary, and not in accordance

with the law; and

- Remanding to the Department to recalculate Plaintiff's margin in accordance with the law.

WHEREFORE, for the reasons described in this Motion, Plaintiff respectfully requests that this Court enter judgment in their favor.  A proposed order is attached for the Court's consideration.

Respectfully submitted,

/s/ Gregory S. Menegaz

Gregory S. Menegaz
Alexandra H. Salzman
Vivien Jinghui Wang
**THE INTER-GLOBAL TRADE LAW GROUP, PLLC**
1156 Fifteenth Street, N.W. Suite 1101 20005
Tel: (202) 868-0300
email:  gmenegaz@igtlaw.com
*Counsel to Plaintiff*

Dated: July 7, 2025

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE RICHARD K. EATON, JUDGE

| | | |
|---|---|---|
| THE ANCIENTREE CABINET CO., LTD | ) | |
| Plaintiff, | ) | |
| | ) | |
| and | ) | Consol. Court No. 24-223 |
| | ) | |
| CRAFT33 PRODUCTS, LLC, | ) | |
| Consolidated-Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES, | ) | |
| Defendant. | ) | |
| | ) | |
| and | ) | |
| | ) | |
| AMERICAN KITCHEN CABINET ALLIANCE, | ) | |
| Defendant-Intervenor | ) | |

**PLAINTIFF'S RULE 56.2 MEMORANDUM IN SUPPORT OF MOTION**

**FOR JUDGMENT UPON THE AGENCY RECORD**

Gregory S. Menegaz
Alexandra H. Salzman
Vivien Jinghui Wang
**THE INTER-GLOBAL TRADE LAW GROUP, PLLC**
Suite 1101
1156 Fifteenth Street, N.W.  20005
Tel: (202) 868-0300
email:  gmenegaz@igtlaw.com
*Counsel to Plaintiff*

Dated: July 7, 2025

# TABLE OF CONTENTS

I.      RULE 56.2 STATEMENT ...................................................................................1

        A.      Administrative Determination Subject to Appeal .........................................1

        B.      Issues Presented ...................................................................................1

II.     Standards of Review ........................................................................................2

III.    ARGUMENT......................................................................................................4

        A.      The Record is Lacking No Necessary Information to Establish Ancientree
                Did Not Use or Benefit from the EBC Program.............................................4

        B.      Record Evidence Establishes that Ancientree Did Not Use or Benefit from
                the EBC Program, or at a Minimum that Ancientree's Customer's
                Providing EBC Questionnaires did not Confer a Benefit to Ancientree ...11

IV.     Conclusion and Prayer for Relief .................................................................17

# TABLE OF AUTHORITIES

**Cases**

*Ancientree Cabinet Co., Ltd. v. United States*, 736 F. Supp. 3d 1334 (Ct. Int'l Trade 2024) ...... 16

*Anderson v. U.S. Sec'y of Agriculture*, 462 F. Supp. 2d 1333 (2006) ............................................ 3

*Atlantic Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984) ................................ 2

*Canadian Solar, Inc. v. United States*, 2020 Ct. Intl. Trade LEXIS 24; SLIP OP. 2020-23 (Feb. 25, 2020) ........................................................................................................................... 5

*Changzhou Trina Solar Energy Co. v. United States*, 352 F. Supp. 3d 1316 (Ct. Int'l Trade 2018) ................................................................................................................................... 5-7

*Changzhou Trina Solar Energy Co. v. United States*, 2019 Ct. Intl. Trade LEXIS 138; SLIP OP. 2019-137 (Nov. 8, 2019) .................................................................................................. 5

*Changzhou Trina Solar Energy Co. v. United States*, 2018 Ct. Intl. Trade LEXIS 179; SLIP OP. 2018-167 (Nov. 30, 2018) ............................................................................................... 6

*Changzhou Trina Solar Energy Co. v. United States*, 2019 Ct. Intl. Trade LEXIS 138; SLIP OP. 2019-143 (Nov. 18, 2019) ............................................................................................... 6

*Changzhou Trina Solar Energy Co. v. United States*, 393 F. Supp. 3d 1245, 1249-1250 (Ct. Int'l Trade 2019) ................................................................................................................... 16

*Clearon Corp. v. United States*, 359 F. Supp. 3d 1344 (Ct. Int'l Trade 2019) ............................. 6

*Clearon Corp. v. United States*, 2020 Ct. Intl. Trade LEXIS 149 (Oct. 8, 2019) ......................... 6

*Clearon Corp. v. United States*, 474 F. Supp. 3d 1339 (Ct. Int'l Trade 2020) ........................... 6-7

*Consol. Bearings Co. v. United States*, 348 F.3d 997 (Fed. Cir. 2003) ......................................... 3

*Dalian Meisen Woodworking Co., Ltd. v. United States*, 719 F. Supp. 3d 1322, 1336 (Ct. Int'l Trade 2024) ................................................................................................................... 14

*Diamond Sawblades Mfrs. Coalition v. United States*, 986 F.3d 1351, 1366-1367 (Fed. Cir. 2021) ..................................................................................................................................... 13

*Diamond Sawblades Manufacturers' Coalition v. United States*, 547 F. Supp. 3d 1323 (Ct Int'l Trade 2021) ......................................................................................................................... 13

*Diversified Products Corp. v. United States*, 6 C.I.T. 155, 161, 572 F. Supp. 883, 888 (1983) .... 2

*Gerald Metals, Inc. v. United States*, 132 F.3d 716, 720 (Fed. Cir. 1997) .................................... 2

*GPX Int'l Tire Corp. v. United States*, 893 F. Supp. 2d 1296, 1332 (Fed. Cir. 2015) ................... 5

*Guizhou Tyre Co., Ltd. v. United States*, 348 F. Supp. 3d 1261, 1270 (Court of Int'l Trade 2018) ....................................................................................................................................... 5-6

*Guizhou Tyre Co. v. United States*, 399 F. Supp. 3d 1346 (Ct. Int'l Trade 2019) ........................ 6

*Guizhou Tyre Co. v. United States*, 415 F. Supp. 3d 1402 (Ct. Int'l Trade 2019) ........................ 6

*Guizhou Tyre Co. v. United States*, 389 F. Supp. 3d 1315 (Ct. Int'l Trade 2019) ........................ 6

*Guizhou Tyre Co. v. United States*, 415 F. Supp. 3d 1335 (Ct. Int'l Trade, 2019) ....................... 6

*Guizhou Tyre Co. v. United States*, 2020 Ct. Intl. Trade LEXIS 86; Slip Op. 2020-81 (June 5, 2020) ............................................................................................................................................ 6

*Jiangsu Zhongji Lamination Materials Co. v. United States*, 405 F. Supp. 3d 1317 (Ct. Int'l Trade 2019) ............................................................................................................................... 6, 12

*Jiangsu Zhongji Lamination Materials Co. v. United States*, 2020 Ct. Intl. Trade LEXIS 41, SLIP OP. 2020-39 at 5 (Mar. 24, 2020) ..................................................................................... 6

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983) ...................... 3

*Mueller Commercial de Mex., S. de R.L. de C.V. v. United States*, 753 F.3d 1227, 1231-32 (Fed. Cir. 2014) .......................................................................................................................... 4

*Nippon Steel Corp. v. United States,* 337 F.3d 1373, 1381 (Fed. Cir. 2003) ................................ 4

*Risen Energy Co. v. United States*, 665 F. Supp. 3d 1335 (Ct. Int'l Trade 2023) ................... 6, 11

*Risen Energy, Co., Ltd. v. United States*, 724 F. Supp. 3d 1356 (Ct. Int'l Trade 2024) ................ 6

*Risen Energy Co. v. United States*, 2023 Ct. Intl. Trade LEXIS 52 ..................................... 7-8, 12

*Risen Energy Co., Ltd.. v. United States*, 2023 Ct. Intl. Trade LEXIS 186 ................................ 14

*Risen Energy, Co., Ltd.. v. United States*, 2024 Ct. Intl. Trade LEXIS 23 ................................. 14

*Risen Energy Co., Ltd. v. United States*, 2024 Ct. Intl. Trade LEXIS 144 ................................. 14

*Shandong Rongxin Imp. & Exp. Co. v. United States,* 163 F. Supp. 3d 1249, 1252 (Ct. Int'l Trade 2016)...................................................................................................... 2

*SKF USA Inc. v. United States*, 263 F.3d 1369 (Fed. Cir. 2001)............................... 3, 10

*SNR Roulements v. United States*, 402 F.3d 1358 (Fed Cir. 2005)................................. 3

*Yama Ribbons & Bows Co. v. United States*, 419 F. Supp. 3d 1341 (Ct. Int'l Trade 2019).......... 6

**Statutes & Regulations**

19 U.S.C. § 1516a(b)(1).......................................................................................... 2-3

19 U.S.C. §1677a(c)(1)(c) ........................................................................................ 15

19 U.S.C. § 1677e(b) ................................................................................................. 4

**Administrative Decisions**

*2,4-Dichlorophenoxyacetic Acid From the People's Republic of China: Final Affirmative Countervailing Duty Determination*, 90 Fed. Reg. 14,957 (April 7, 2025)................................... 9

*Alloy and Certain Carbon Steel Threaded Rod From the People's Republic of China: Preliminary Results and Partial Rescission of Antidumping Duty Administrative Review; 2022-2023*, 89 Fed. Reg. 35,069 (May 1, 2024) ........................................................... 16

*Certain Brake Drums From the People's Republic of China: Final Affirmative Countervailing Duy Determination,* 90 Fed. Reg. 26,002 (June 18, 2025) ........................................................ 9-10

## I.    RULE 56.2 STATEMENT

Pursuant to Rule 56.2 (c)(1), Plaintiff The Ancientree Cabinet Co., Ltd., ("Ancientree" or "Plaintiff") hereby states the administrative decision subject to appeal and the issues of law presented:

### A.  Administrative Determinations Subject to Appeal

The U.S. Department of Commerce (the "Department") published its contested final results in the Federal Register on November 7, 2023.  *Wooden Cabinets and Vanities and Components Thereof From the People's Republic of China: Final Results of the Countervailing Duty Administrative Review; 2022*, 89 Fed. Reg. 88,962 (November 12, 2024) PR347[1], *incorporating* Issues & Decision Memorandum ("IDM"), PR336.

### B.  Issues Presented

1.    <u>Issue One</u>: Whether the Department's application of AFA with respect to Ancientree's use of the EBCP is supported by substantial evidence or in accordance with the law?

2.    <u>Issue Two</u>: Whether the Department's application of AFA to find use of the EBCP with respect to the customers that provided EBC supplemental questionnaire responses is supported by substantial evidence, not in accordance with the law, or arbitrary?

---

[1] "PR" indicates public documents on the Department's administrative record in this case; "CR" indicates confidential documents on the Department's administrative record.

## II.     Standards of Review

This Court "shall hold unlawful any determination . . . found . . . to be unsupported by substantial evidence on the record or otherwise not in accordance with law.[2]

The Court will only sustain the Department's factual determination if it is based on substantial evidence. 19 U.S.C. § 1516a(b)(1)(B)(i).  Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951) (quoting *Consolidated Edison Corp. v. Labor Board*, 305 U.S. 197, 229 (1938)).   Furthermore, "substantial evidence" must be measured by a review of the record as a whole, "including whatever fairly detracts from the substantiality of the evidence." *Atlantic Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984).  Thus, "it is appropriate to set aside the ITA's decision when the court 'cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to [its] view.'" *Diversified Products Corp. v. United States*, 6 C.I.T. 155, 161, 572 F. Supp. 883, 888 (1983) (quoting *Universal Camera*, 340 U.S. at 488).  Moreover, "Commerce's determination cannot be based on isolated tidbits of data which suggest a result contrary to the clear weight of the evidence." *Shandong Rongxin Imp. & Exp. Co. v. United States,* 163 F. Supp. 3d 1249, 1252 (Ct. Int'l Trade 2016) (internal citation omitted).  The substantial evidence standard "requires more than mere assertion of 'evidence which in and of itself justified {the determination}, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn.'" *Gerald Metals, Inc. v. United*

---

[2] 19 U.S.C. § 1516a(b)(1)(B)(i); *accord SNR Roulements v. United States*, 402 F.3d 1358, 1361 (Fed Cir. 2005).

*States*, 132 F.3d 716, 720 (Fed. Cir. 1997) (quoting *Universal Camera*, 340 U.S. at 487).

Further, the Court will also hold as unlawful any administrative decision that is arbitrary, capricious, or an abuse of discretion. *See* 19 U.S.C. § 1516a(b)(l)(A). Normally, an agency decision would be arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The Department acts arbitrarily and capriciously when it "consistently follow[s] a contrary practice in similar circumstances and provide[s] no reasonable explanation for the change in practice." *Consol. Bearings Co. v. United States*, 348 F.3d 997, 1007 (Fed. Cir. 2003). It is well-established that "[a]n agency action is arbitrary when the agency offers insufficient reasons for treating similar situations differently." *SKF USA Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001) (alteration, quotation marks and citation omitted). An agency "must cogently explain why it has exercised its discretion in a given manner." *Motor Vehicle Mfrs.*, 463 U.S. at 48 (citations omitted). Internal inconsistency and self-contradiction do not satisfy this requirement. Indeed, a "principal justification for the administrative state is that in 'area[s] of limitless factual variations, like cases will be treated alike.'" *Anderson v. U.S. Sec'y of Agric.*, 30 C.I.T. 1742, 462 F. Supp. 2d 1333, 1339 (2006) (internal citation omitted) ("Courts will therefore not defer to an agency regulation or adjudicative decision when they produce results which are arbitrary, capricious, or manifestly contrary to the statutory scheme."). Thus, when the administering agency treats similarly situated parties differently or fails to consider an important aspect of a problem, its decisions are arbitrary and capricious and subject to reversal.

## III. ARGUMENT

### A. The Record is Lacking No Necessary Information to Establish Ancientree Did Not Use or Benefit from the EBC Program.

The Department's use of adverse facts available ("AFA") to find that Ancientree benefitted from the EBC program when record evidence only contains evidence of non-use is unreasonable and unlawful. The Federal Circuit has described the application of AFA as a two-part inquiry. First, the Department must identify why it needs to rely on facts otherwise available, and second, the Department must show how a party failed to cooperate to the best of its ability as to warrant the use of an adverse inference when "selecting from the facts otherwise available." *See* 19 U.S.C. § 1677e(b); *Nippon Steel Corp. v. United States,* 337 F.3d 1373, 1381 (Fed. Cir. 2003) ("{T}he legislative history mirrors the language in the statute by recognizing that: (1) the Department must use facts otherwise available when requested information is missing and (2) the Department may impose an adverse inference after determining that a respondent has not been fully cooperative or has failed to act to the best of its ability in gathering information."); *Mueller Commercial de Mex., S. de R.L. de C.V. v. United States*, 753 F.3d 1227, 1231-32 (Fed. Cir. 2014) (quoting *Nippon Steel*, 337 F.3d at 1381). The Department is allowed to use facts available only when "necessary information is not available on the record," or an interested party has withheld requested information, significantly impeded the investigation, or provided unverifiable information. 19 U.S.C. § 1677e(a). As such, the Department must first establish its authority to act under Section 1677e(a) before it can properly invoke Section 1677e(b) and apply AFA.

In its Final Results, the Department found that the GOC had not cooperated to the best of its ability in response to Commerce's specific information requests, and found "Ancientree's voluntary efforts to overcome the GOC's deficiencies in this case failed to produce information

sufficient to fill the gaps in the record resulting from the GOC's refusal to provide Commerce with the material requested and which Commerce deems essential to determine non-use." IDM at 15. As a result, the Department applied AFA and found Ancientree used this program. *Id.* at 15-16.

Use of AFA is only appropriate where information is otherwise not available on the record, and should not be used "simply to punish" a non-cooperative party. *Guizhou Tyre Co., Ltd. v. United States*, 348 F. Supp. 3d 1261, 1270 (Court of Int'l Trade 2018) (citations omitted). The Department must consider all information placed on the record. *GPX Int'l Tire Corp. v. United States*, 893 F. Supp. 2d 1296, 1332 (Fed. Cir. 2015) ("When Commerce has access to information on the record to fill in the gaps created by the lack of cooperation by the government, as opposed to the exporter/producer, however, it is expected to consider such evidence.").

In consideration of the information provided by the GOC <u>and Ancientree</u>, the Department has not in fact identified any gap by the GOC in the record with necessary information missing. The Department restated the same issues from past reviews that it has found with the GOC's supposedly deficient responses to questions on this program, namely finding that they cannot verify this program without the "2013 Revisions to the EBC program and the complete list of partner/correspondent banks involved in the program." *See* IDM at 15. But the Department failed to properly consider the GOC's responses in light of what is necessary and in consideration of additional information from Ancientree and its customers.

The Courts have repeatedly rejected the Department's application of AFA to this program when it has failed to demonstrate that missing information was actually necessary. *See, e.g., Changzhou Trina Solar Energy Co. v. United States*, 352 F. Supp. 3d 1316 (Ct. Int'l Trade

2018); *Changzhou Trina Solar Energy Co. v. United States*, 2019 Ct. Intl. Trade LEXIS 138; SLIP OP. 2019-137 (Nov. 8, 2019); *Canadian Solar, Inc. v. United States*, 2020 Ct. Intl. Trade LEXIS 24; SLIP OP. 2020-23 (Feb. 25, 2020) (*Solar Cells from China* POR 2015, granting Commerce's request for voluntary remand to reevaluate the AFA application on the EBC program); *see also, Guizhou Tyre Co. v. United States*, 348 F. Supp. 3d 1261, 1270 – 71 (Ct. Int'l Trade 2018); *see e.g., Guizhou Tyre Co. v. United States*, 399 F. Supp. 3d 1346 (Ct. Int'l Trade 2019); *Guizhou Tyre Co. v. United States*, 415 F. Supp. 3d 1402 (Ct. Int'l Trade 2019); *Guizhou Tyre Co. v. United States*, 389 F. Supp. 3d 1315 (Ct. Int'l Trade 2019); *Guizhou Tyre Co. v. United States*, 415 F. Supp. 3d 1335 (Ct. Int'l Trade, 2019); *Guizhou Tyre Co. v. United States*, 2020 Ct. Intl. Trade LEXIS 86; Slip Op. 2020-81 (June 5, 2020); *Changzhou Trina Solar Energy Co. v. United States*, 2018 Ct. Intl. Trade LEXIS 179; SLIP OP. 2018-167 (Nov. 30, 2018); *Changzhou Trina Solar Energy Co. v. United States*, 2019 Ct. Intl. Trade LEXIS 138; SLIP OP. 2019-143 (Nov. 18, 2019); *Clearon Corp. v. United States*, 359 F. Supp. 3d 1344 (Ct. Int'l Trade 2019); *Clearon Corp. v. United States*, 2020 Ct. Intl. Trade LEXIS 149 (Oct. 8, 2019); *Clearon Corp. v. United States*, 474 F. Supp. 3d 1339 (Ct. Int'l Trade 2020); *Yama Ribbons & Bows Co. v. United States*, 419 F. Supp. 3d 1341 (Ct. Int'l Trade 2019) (*Narrow Woven Ribbons from China* POR 2015 first opinion); *Jiangsu Zhongji Lamination Materials Co. v. United States*, 405 F. Supp. 3d 1317 (Ct. Int'l Trade 2019); *Jiangsu Zhongji Lamination Materials Co. v. United States*, 2020 Ct. Intl. Trade LEXIS 41, SLIP OP. 2020-39 at 5 (Mar. 24, 2020); *Risen Energy Co. v. United States*, 665 F. Supp. 3d 1335 (Ct. Int'l Trade 2023); *Risen Energy, Co., Ltd. v. United States*, 724 F. Supp. 3d 1356 (Ct. Int'l Trade 2024).

The *Changzhou Trina* Court held that although the Department can choose among FA or AFA to fill the record, the "choice must fill in the information that is actually missing."

Changzhou Trina I, 352 F. Supp. 3d at 1327.  Further, if the Department were to claim that record evidence – such as importer's certification of non-use of the EBC program– is unverifiable, the Department must "first reasonably show that such information is, in fact, unverifiable."  *Id*.  Similarly in *Clearon*, the Court found that "although Commerce, in the Remand Results, takes the court through why it wanted this information, as has been found in other cases in this Court, it is not clear that any of the missing information was "necessary" to Commerce's central statutory inquiry, i.e., to determine whether the Export Buyer's Credit Program provided a benefit to Heze."  *Clearon Corp*., 474 at 1353-1354.  Yet again, "{t}he Department has assumed the conclusion—that a gap in the record exists as a result of [China's] failure to cooperate—without addressing what 'constitutes a "gap" in the record,' and by pointedly closing its eyes on the evidence provided by [Heze] that would 'fairly detract[ ]' from its ultimate conclusion."  *Id*. at 1352 (internal citation omitted).

In more recent opinions, even since the Department's practice of issuing supplemental EBC questionnaires like it did in this case, the Court has continued to find the Department's refusal to acknowledge or verify the information provided by the Respondents to fill any gap is unlawful:

> Although the GOC did not provide all of the information it should have, another party, such as a mandatory respondent, may be in a position to provide the information sought or to render that information irrelevant, so that no adverse inference need be drawn. See Jiangsu Zhongji Lamination Materials Co. v. United States, 405 F. Supp. 3d 1317, 1333 (2019); GPX Int'l Tire, 37 CIT at 58-59, 893 F. Supp. 2d at 1332. Here, Risen has supplied information so that there is no relevant missing information about the EBCP. Not only has Risen provided sworn declarations from each of its customers stating that they did not use financing from the EBCP, but, after remand, Risen supplied financial, loan, and record information regarding 6 of its 12 customers, representing roughly 95% of sales during the POR. Commerce's refusal to verify the customer data and continued application of other facts available is not supported by substantial evidence on this record because the information necessary to the determination, assuming it is verified, is not lacking.

*Risen Energy Co. v. United States*, 2023 Ct. Intl. Trade LEXIS 52, *10-11 (record citation omitted). The Court found that " Commerce cannot reasonably conclude that Risen did not supply information that rendered the missing data from the GOC irrelevant and essentially eliminated any gap in the record." *Id*. at *13.

Essentially, the rationale behind all above-cited court opinions is the same, *i.e.*, the Department must explain what necessary information is actually missing to prevent verification of the record information of non-use. In this instant proceeding, the Department has not identified any "gap" in the record which would then trigger the lawful use of facts available or facts available with adverse inferences taking into account the information Ancientree and the GOC has supplied.

Record evidence demonstrates that Ancientree did not use or benefit from the Export Buyer's Program ("EBC"). In its Section III response, Ancientree responded that it has never applied for any EBC loans for itself or its customers, and Ancientree also provided customer declarations of non-use from <u>every</u> single customer Ancientree sold to during the POR. *See* Ancientree Section III Response at 19-20, Exhibit 13 (October 19, 2023); CR41-51 PR116. Although Ancientree has never been involved in any loans applications under EBC, Ancientree and the GOC explained that the exporter - in this case, Ancientree itself - must be aware of such loan in any case because the Chinese exporter would be involved in the loan evaluation proceeding and in particular in the post-lending loan management. *Id*.; *see also* GOC Initial Questionnaire Response (October 19, 2023) at 147-157 (detailing that the Customer, i.e. Ancientree, would need to submit information to benefit from this program and would obtain money directly from the China Ex-Im Bank) and Exhibit III-B11.2; CR12-28 PR90-115; *see also*

GOC Supp Questionnaire (February 27, 2024) at 28-30 and Exhibit III.B11,.4 CR104-131

PR167-172. The GOC also corroborated Ancientree's response of non-use by submitting

printouts of searches in China EX-IM Bank's database of Ancientree's customers' names. *See*

Exhibit III.B11.4. As such, all parties involved, namely the GOC, Ancientree, and even

Ancientree's customers, have responded as to the non-use of this program. Yet, despite all the

record evidence, the Department still applied AFA to Ancientree on EBC.

Further, the Department itself has even acknowledged in recent cases that it can verify

non-use at the exporter itself. For example in *2-4- Dichlorophenoxyacetic Acid*, the Department

explained:

> Thus, while the credit would appear as a loan or debt obligation in the books and
> records of the U.S. customer, it would also appear as a disbursement or payment
> in the books and records of the Chinese respondent/exporter. When the funds are
> disbursed to the exporter's account, the disbursement is identified as payment for
> the shipment. Therefore, usage of the program by a respondent's U.S. customers
> would be indicated by either the existence of an EXIM Bank account in the
> respondent's chart of accounts, trial balance, or general ledger, or by the
> disbursement of funds by the EXIM Bank to the respondent as payment for
> shipments to U.S. customers.

*2,4-Dichlorophenoxyacetic Acid From the People's Republic of China: Final Affirmative

Countervailing Duty Determination*, 90 Fed. Reg. 14,957 (April 7, 2025) and accompanying

IDM at Comment 5.

Notably, this explanation is consistent with what the GOC and Ancientree have attested

to in this very review on appeal. In *2-4- Dichlorophenoxyacetic Acid*, due to the finding that

disbursement would be directly to the respondents, the Department found:

> As a result, we find that Commerce can verify non-usage of the program with the
> respondents themselves. In the case of Tianyu, Commerce was able to verify that
> the respondent did not use the program. Commerce's non-use findings are specific
> to Tianyu based on the respondent's questionnaire responses and verification.

*Id*.; *see also Certain Brake Drums From the People's Republic of China: Final Affirmative Countervailing Duy Determination,* 90 Fed. Reg. 26,002 (June 18, 2025) and accompanying IDM at Comment 4. ("Given the information above, Commerce determines that usage of the EBCP can be determined through the books and records of a cooperative respondent, and, thus, the verification of ConMet serves to corroborate the company's claims of non-use of the EBCP. At verification of ConMet, in our non-use tests and during our examination of the chart of accounts and various lending accounts, Commerce saw no mention of this program and otherwise observed no discrepancies with the company's reported information."

Thus, the Department's explanation in this review that it needs a complete response to the supplemental questionnaire from every customer in order to trace and tie the unaffiliated customers' subledgers to the outstanding loans, and that only partial information "does not leave Commerce with a path towards further investigating, completely verifying"—is actually not true by the Department's own admission. IDM at 16. The Department can verify non-use with the exporter, Ancientree, on this record. To find otherwise is arbitrary. *SKF USA Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001) (It is well-established that "[a]n agency action is arbitrary when the agency offers insufficient reasons for treating similar situations differently.")

Further, the sworn statements from every U.S. Customer also corroborates the accuracy of what Ancientree and the GOC have already demonstrated: Ancientree did not benefit from this program. Further, as elaborated more below, the majority of Ancientree's Customers even went far beyond this and provided substantial, highly confidential information on their own loans which only further corroborate what all record evidence has demonstrated all along--- Ancientree did not benefit from this program.

**B. Record Evidence Establishes that Ancientree Did Not Use or Benefit from the EBC Program, or at a Minimum that Ancientree's Customer's Providing EBC Questionnaires did not Confer a Benefit to Ancientree.**

As explained above, the record establishes non-use for all of Ancientree's customers. Ancientree's own questionnaire responses demonstrate that it did not receive any benefit from the program. Ancientree and the GOC's responses demonstrate that the exporter must know if the program was used, and thus no additional information is needed. Nonetheless, the record also contains information from every single customer in the form of a sworn[3] statement that they did not use this program. Thus, all information on the record supports that Ancientree did not benefit from this program. Notably, there is no evidence to the contrary.

The Department stated that it was applying AFA because it lacked necessary information from the GOC and that Ancientree had not filled any such gap because it was not able to provide the information requested in the supplemental questionnaire from every one of its customers. IDM at 16. The Department issued a questionnaire to Ancientree requesting very expansive and highly confidential information from all of their unaffiliated customers. This questionnaire requested information on the unaffiliated customers' outstanding financing during the POR, documentation for the largest five loans/financing, additional questions regarding the application/process of obtaining EBC financing, and requests for several confidential documents including the chart of accounts, audited income statements, trial balance ledger, and tying loan and expense amounts to these documents. Despite the confidential and burdensome nature of this information, Ancientree was able to obtain cooperation from more than half of its customers. *See* Ancientree EBC Qre (February 29, 2024), CR132-137 PR173.

---

[3] *Risen Energy Co. v. United States*, 665 F. Supp. 3d 1335, 1343 ("No evidence presented to the court suggests that these statements are not punishable under 18 U.S.C. § 1001 if either Risen or a customer is lying.")

The information provided by these customers only confirmed what they had stated in their non-use statements. Notably, the customers that it could not obtain this detailed information from had nonetheless provided statements of non-use and Ancientree and the GOC confirmed their non-use. Nothing on the record supports a finding that any customer benefitted from this program. All evidence on the record only supports every customer's statement of non-use of the program. The Department's determination that this program was used is not supported by any shred of evidence on the record. Indeed, several of these customers were also verified in person by the Department only the year prior to this review in the appeal of the investigation. The Department found no evidence of use of the EBC program at these verifications. This also corroborates the accuracy of the non-use statements and questionnaire responses.

Further, the Department's statement that it could not verify non-use of the program without supplemental questionnaire responses from <u>every</u> customer is not reasonable or supported by the record. While Ancientree maintains that the Department can verify non-use of the program from its own books and records, at a minimum, the Department can verify on the record[4] the non-use of the EBC program for the customers that did provide a supplemental questionnaire response. Each customer's use of the EBC program stands alone. In other words, *in arguendo*, if one customer did use the EBC program, that has absolutely no bearing on whether another customer used the EBC program. Thus, the fact that some customers did not provide a questionnaire response does not prevent the Department from verifying and relying on the information provided by the other customers. The Courts have been critical of the

---

[4] *Risen Energy Co. v. United States*, 2023 Ct. Intl. Trade LEXIS 149, *10-11 ("Throughout the long history of EBCP litigation in the court there has been an absolute dearth of evidence that any U.S. customer has ever used the program. No party has ever demonstrated that a U.S. customer has received financing through the EBCP. Thus, if Commerce chooses to attempt verification, the court expects that Commerce will not pursue onerous verification requirements.")

Department's blanket dismissal of record evidence from a cooperating respondent, and here again, the Department is doing the same by dismissing the information that is on the record. *See*, e.g., *Jiangsu Zhongji Lamination Materials Co. v. United States*, 405 F. Supp. 3d 1317, 1333-34 (Ct. Int'l Trade 2019) (The Court instructed the Department to "consider what information could be verified that would show non-use" and emphasized that "effort should be made to avoid the collateral consequences to cooperating parties of another's non-cooperation."). Indeed, the Department verified the other respondent Pengjia's customer's EBC questionnaire on the record (i.e. on paper without an further information needed than the one supplemental questionnaire) and found non-use for its customer and Pengjia. Prelim. IDM at 19. The Department was fully able to do this for Ancientree's customers based on the information already on the record.

As the Department acknowledges, it has a complete response from a significant portion of Ancientree's customers. The Department cannot use "facts otherwise available" under 19 U.S.C. § 1677e(a) or apply adverse inference under § 1677e(b) because necessary information is not missing from the record. Therefore, the Department has no factual basis to apply an EBC rate to those customers that provided answers to the EBC supplemental questionnaire. *See Diamond Sawblades Mfrs. Coalition v. United States*, 986 F.3d 1351, 1366-1367 (Fed. Cir. 2021) (finding the Department's application of AFA to the entire sales database was not supported by substantial evidence when the missing information only involved 2.5% of the sales.); *see also Diamond Sawblades Manufacturers' Coalition v. United States*, 547 F. Supp. 3d 1323 (Ct Int'l Trade 2021) (Upholding the Department's application of AFA to only the 2.5% of the sales).

Accordingly, if the Department does not find non-use overall, the Department should set up customer specific rates for the case, with no EBC program included in the rate for the customers that were successfully verified for non-use. The Department has regularly set up such

customer specific liquidation instructions in antidumping cases, including in the companion

antidumping reviews for this very Order.  This method would allow the Department to restrict

the AFA to only the supposed missing information--- i.e. to only the customers that did not

provide questionnaire responses.   Indeed, this very Court instructed the Department to take this

approach in the investigation after the Department repeatedly attempted to ignore the record

evidence of non-use.  The Court explained:

> Based on this verification determination, with respect to the sales to those
> companies whose non-use of the Program has been verified, Commerce must
> eliminate the subsidy represented in the rate applied to those sales. Commerce
> now knows that their declarations of non-use were valid. There is no gap in the
> record. And Commerce can base its determination of non-use on verified
> information in accordance with the statute.

*Dalian Meisen Woodworking Co., Ltd. v. United States*, 719 F. Supp. 3d 1322, 1336 (also

explaining that this . The Court then ordered:

> ORDERED that, on remand, for each customer whose non-use of the Program was
> verified Commerce must determine a customer-specific rate that excludes a subsidy
> amount for the Program, and recalculate Ancientree's total rate, and the all-others rate.
> The Department may determine its own method for complying with this order…

*Id*. at 1338.  The Department followed this Order and on remand ex

Notably, the Court in *Meisen* specifically found that the approach in that investigation

may be different than the *Risen* line of cases because *Meisen* was an investigation while the

*Risen* cases were reviews, where verification is not required.  *Id*. at 1335-1337.  The Meisen

Court still found the *Risen* cases very persuasive in that investigation appeal.  But here, we are in

a review like the *Risen* cases.  Thus, we submit that the *Risen* cases, which were even more

critical of the Department's refusal to accept record evidence from the respondents as verifiable,

are even more instructive for this appeal of a review.  In the Risen appeals of the 2017, 2019, and

2020 countervailing review of Solar from China, the Department ultimately found non-use of the

EBC subsidy program all together in light of the Court's opinions, Risen's cooperation, and the

majority of Risen's Customer's cooperation.  *Risen Energy Co., Ltd.. v. United States*, 2023 Ct. Intl. Trade LEXIS 186; *Risen Energy, Co., Ltd.. v. United States*, 2024 Ct. Intl. Trade LEXIS 23; *Risen Energy Co., Ltd. v. United States*, 2024 Ct. Intl. Trade LEXIS 144.

Ancientree submits that this Court should find that the record supports a finding of complete non-use of the EBC program.  The Department's decision to the contrary is unsupported by a fair view of the entire record.  However, at a minimum, consistent with *Meisen*, the Court should Order the Department that it has no basis to find use of the program for the Customers that did provide supplemental questionnaire responses.  The Department's refusal to accept that information and find non-use for at least that subset is contrary to the substantial evidence on this record, arbitrary in consideration of the Department treatment of Pengjia, and contrary to Court precedent.

Lastly, the finding of use of this program is also unlawful because it is double-counted in the 2021-2022 antidumping review overlapping with this POR.  In calculating the export price in an antidumping review, the Department is ordered to increase the U.S. sales price of subject merchandise by the amount of any export subsidy found countervailable in the companion countervailing Order.  Such an adjustment is not discretionary but it is required by statute.  The statute directs the Department that "[t]he price used to establish export price and constructed export price shall be  (1) increased by ... (c) the amount of any countervailing duty imposed on the subject merchandise under part I of this subtitle to offset an export subsidy."  19 U.S.C. §1677a(c)(1)(c).  The use of "shall" denotes a necessary requirement under the law.

Indeed, the Department makes this adjustment as a matter of course in accordance with the law in order to avoid double remedies when AD and CVD Orders apply to the same merchandise. *See*, e.g., *Alloy and Certain Carbon Steel Threaded Rod From the People's*

*Republic of China: Preliminary Results and Partial Rescission of Antidumping Duty Administrative Review; 2022-2023*, 89 Fed. Reg. 35,069 (May 1, 2024) and accompanying Prelim. IDM at 14 (offsetting the EBC program); *Changzhou Trina Solar Energy Co. v. United States*, 393 F. Supp. 3d 1245, 1249-1250 (Ct. Int'l Trade 2019) ("Given that 19 U.S.C. § 1677a(c)(1)(C) uses the mandatory 'shall' to direct Commerce's actions as to offsets when Commerce imposes a countervailing duty and here Commerce imposed such a duty, the increase to Trina's U.S. selling prices by the amount countervailed to offset the export subsidy is in accordance with law.").  The fact that this program is an export subsidy is not in dispute and well established including in this review where the EBC program is listed as an export subsidy.

However, the Department failed to adjust for this in the 2021-2022 antidumping review overlapping with part of this POR.  Ancientree appealed this decision, but Ancientree's motion for judgment was denied for failure to exhaust remedies.  The Court specifically found that the pure question of law exception to exhaustion did not apply because this not a pure question of law whether to adjust for the export subsidy because the subsidy rate was under appeal and was thus a methodological issue.  *Ancientree Cabinet Co., Ltd. v. United States*, 736 F. Supp. 3d 1334 (Ct. Int'l Trade 2024).

Thus, we also raise this here that the Department made a methodological choice in the 2021-2022 review not to adjust for the EBC program at all, thus for this separate additional reason the Court should not sustain any EBC rate in this review because to do so would be double counting, contrary to law.

## IV.     Conclusion and Prayer for Relief

In light of the foregoing, the Department's *Final Results* were not accordance with the law.  Plaintiff respectfully requests that the Court remand this case for redetermination of the issues presented in this brief.

Respectfully submitted,

 /s/ Gregory S. Menegaz

Gregory S. Menegaz
Alexandra H. Salzman
Vivien Jinghui Wang[*]
**THE INTER-GLOBAL TRADE LAW GROUP, PLLC**
Suite 1101
1156 Fifteenth Street, N.W.  20005
Tel: (202) 868-0300
email:  gmenegaz@igtlaw.com
Date: July 7, 2025                                    *Counsel to Plaintiff*

---

[*] Admitted to New Mexico Bar; practice limited to Federal International Trade Matters pursuant to D.C. Bar Rule 49(c)(2).

17

**Word Count Certificate of Compliance**

This brief has been prepared utilizing Microsoft Word 2007 using a proportionally spaced typeface (12 point Times New Roman font).

In accordance with this Court's Scheduling Order and the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that his brief complies with the word limitations set forth.  Specifically, excluding those exempted portions of the brief, as set forth in 2 B (1) of the Chambers Procedures, I hereby certify that this brief contains **5,151** words. In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

/s/ Gregory S. Menegaz

Gregory S. Menegaz
**THE INTER-GLOBAL TRADE LAW GROUP, PLLC**
Suite 1101
1156 Fifteenth Street, N.W.  20005
Tel: (202) 868-0300
email:  gmenegaz@igtlaw.com
*Counsel to Plaintiff*