C-570-107
Remand
Court No. 24-00223
POR:  01/01/2022 - 12/31/2022
**Public Version** ~~Business Proprietary Document~~
E&C/OI:  SRM

**_The Ancientree Cabinet Co., Ltd., et. al. v. United States_,**
**Consol. Court No. 24-00223 (CIT September 30, 2025)**
**Wooden Cabinets and Vanities and Components Thereof**
**from the People's Republic of China**

**FINAL RESULTS OF REDETERMINATION**
**PURSUANT TO COURT REMAND**

I.    **SUMMARY**

The U.S. Department of Commerce (Commerce) has prepared these final results of

redetermination pursuant to the remand order of the U.S. Court of International Trade (the Court)

in _The Ancientree Cabinet Co., Ltd., et. al. v. United States_, Consol. Court No. 24-00223

(September 30, 2025) (_Remand Order_).[1]  These final results of redetermination concern the final

results in the countervailing duty (CVD) administrative review of wooden cabinets and vanities

and components thereof from the People's Republic of China (China).[2]

In the _Remand Order_, the Court granted Commerce's request for a voluntary remand to

reconsider its application of adverse facts available (AFA) to determine that The Ancientree

Cabinet Co. Ltd. (Ancientree) benefited from the Export Buyer's Credit Program (EBCP).

Pursuant to the _Remand Order_, Commerce has addressed parties' comments regarding the

---

[1] _See The Ancientree Cabinet Co., Ltd., et. al. v. United States_, Consol. Court No. 24-00223, (CIT September 30, 2025) (_Remand Order_).
[2] _See Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: Final Results of Countervailing Duty Administrative Review; 2022_, 89 FR 88962 (November 12, 2024) (_2022 AR Final Results_), and accompanying Issues and Decision Memorandum (IDM); _see also Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: Final Results of Countervailing Duty Administrative Review; 2022; Correction_, 90 FR 8120 (January 24, 2025) (correcting the original notice to identify the cross-owned affiliates of Ancientree).

EBCP.  As explained below, in these final results of redetermination, we continue to calculate customer-specific EBCP rates using the pro-rata approach.

## II.    BACKGROUND

On June 12, 2023, Commerce initiated an administrative review of wooden cabinets and vanities and components thereof from China for 42 producers and exporters of the subject merchandise for period of review (POR) of January 1, 2022, through December 31, 2022.[3] Between August 16 and November 23, 2023, Commerce selected Ancientree and Yixing Pengjia Cabinetry Co., Ltd. (Pengjia) as the mandatory respondents.[4]  On August 24 and November 13, 2023, we issued the initial questionnaire to the Government of China (GOC) and informed the GOC that it was responsible for forwarding the questionnaire to the mandatory respondents.[5] Between September 7, 2023, and January 4, 2024, we received timely responses to the initial questionnaire from the GOC, Ancientree, and Pengjia.[6]

The GOC declined to provide certain information regarding the EBCP needed to analyze financial contribution and specificity.  Specifically, the GOC was unresponsive to the majority of our questions about the use and operation of the program.[7]  It also failed to provide information,

---

[3] *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 88 FR 38021 (June 12, 2023).
[4] *See* Memorandum, "Respondent Selection," dated August 16, 2023; *see also* Memorandum, "Fourth Respondent Selection," dated November 13, 2023.  Sunwell Cabinetry Co. Ltd. was selected initially as a mandatory respondent but subsequently filed a notice of intent not to participate in this administrative review.  Commerce then successively selected two other replacement respondents, each of which either submitted a notice of intent not to participate or did not timely file a response to the initial questionnaire.  On November 13, 2023, Commerce selected Pengjia as an additional mandatory respondent.
[5] *See* Commerce's Letter, "Initial Questionnaire," dated August 24, 2023; *see also* Commerce's Letter, "Selection of Additional Mandatory Respondent," dated November 13, 2023.
[6] *See* Ancientree's Letter, "Identifying Affiliates Response," dated September 7, 2023; GOC's Letter, "Response to Section II," dated October 19, 2023 (GOC IQR); Ancientree's Letter, "Section III Response," dated October 19, 2023 (Ancientree IQR); Jiangsu Hongjia Wood Co., Ltd.'s Letter, "Section III Response," dated October 19, 2023; Jiangsu Hongjia Wood Co., Ltd. Shanghai Branch's Letter, "Section III Response," dated October 19, 2023; Jiangsu Yunru Technology Industrial Co., Ltd.'s Letter, "Section III Response," dated October 19, 2023; Pengjia's Letter, "Identifying Affiliates Response," dated November 27, 2023; GOC's Letter, "Response to Section II," dated January 4, 2024 (GOC IQR II); and Pengjia's Letter, "Section III Response," dated January 4, 2024.
[7] *See* GOC IQR at II-20; and GOC IQR II at 122-133.

such as all laws, regulations or governing documents, including the Administrative Measures regarding the program in 2013 and a list of partner/correspondent banks in its initial or supplemental questionnaire responses.[8]  In their initial questionnaire responses, Ancientree and Pengjia claimed that none of their U.S. customers used the EBCP and provided non-use certifications for each of its U.S. customers.[9]  Following the receipt of the non-use certifications, we issued EBCP supplemental questionnaires to Ancientree's and Pengjia's U.S. customers requesting additional information regarding all their financing activities.[10]  While Pengjia was able to provide complete information for its U.S. customer, Ancientree was only able to provide complete information for some of its customers.[11]

In the *2022 AR Preliminary Results*, we found that the GOC did not provide information needed to analyze the program and, therefore, the GOC had not cooperated to the best of its ability in response to Commerce's requests for information, within the meaning of section 776(a) and (b) of the Act.[12]  As a result, we used AFA to find that the loans provided through the EBCP constituted a financial contribution under sections 771(5)(B)(i) and 771(5)(D)(i) of the Act and that the receipt of the EBCP loans was specific pursuant to sections 771(5A)(A)-(B) of the Act.[13]  With respect to the EBCP benefit, we found that without full questionnaire responses regarding financing activities from each of Ancientree's U.S. customers, we were unable to determine or

---

[8] *See* GOC IQR at II-20; and GOC's Letter, "Response to First Supplemental Questionnaire," dated February 27, 2024 at 29-30.
[9] *See* Ancientree IQR at 19 and Exhibit 15.
[10] *See* Commerce's Letter, "Export Buyer's Credit Supplemental Questionnaire," dated January 29, 2024; and Commerce's Letter, "Export Buyer's Credit Supplemental Questionnaire," dated January 29, 2024.
[11] *See* Ancientree's Letter, "EBC Supplemental Questionnaire Response," dated February 29, 2024 (Ancientree EBC SQR); *see also* Pengjia's Letter, "EBC Questionnaire Response," dated February 14, 2024; and Pengjia's Letter, "EBC Questionnaire Response II," dated February 22, 2024.
[12] *See Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: Preliminary Results and Partial Rescission of Countervailing Duty Administrative Review; 2022*, 89 FR 35782 (May 2, 2024) (*2022 AR Preliminary Results*), and accompanying Preliminary Decision Memorandum (PDM) at 17.
[13] *See 2022 AR Preliminary Results* PDM at 18.

verify whether the non-responsive U.S. customers used the EBCP.[14]  Accordingly, because of the GOC's and Ancientree's lack of complete responses, we relied on AFA to find that the EBCP was countervailable and benefited Ancientree.[15]  Regarding Pengjia, we determined that the complete information for its U.S. customer demonstrated that it had not used or benefited from the program during the POR.[16]

The GOC and Ancientree timely filed case briefs regarding the EBCP.[17]  Further, Craft33 Products, LLC (Craft33), a U.S. customer and importer of subject merchandise from Ancientree during the POR, timely filed a letter in lieu of a case brief supporting the views expressed by Ancientree in its case brief.[18]  The American Kitchen Cabinet Alliance (AKCA) (the petitioner) and Masterbrand Cabinets, Inc. (Masterbrand) timely filed rebuttal briefs regarding this program.[19]

In its case brief, the GOC argued that Commerce unlawfully relied on AFA to find that the EBCP provided a financial contribution and was specific and that record information demonstrated that the respondents did not use the program.[20]  Specifically, the GOC claimed: (1) that other record information (*e.g.*, screenshots from China Export-Import Bank system) were sufficient to demonstrate the respondents' non-use of the program; (2) it acted to the best of its ability to provide all information regarding the program; and (3) the respondents provided sufficient information in their questionnaire and supplemental questionnaire responses to

---

[14] *Id.* at 19.
[15] *Id.*
[16] *Id.*
[17] *See* GOC's Letter, "Case Brief," dated June 3, 2024 (GOC Case Brief); and Ancientree's Letter, "Case Brief," dated June 3, 2024 (Ancientree Case Brief).
[18] *See* Craft33's Letter, "Letter in Lieu of Case Brief," dated June 3, 2024 (Craft33 Letter in Lieu of Brief).
[19] *See* AKCA's Letter, "Petitioner's Rebuttal Brief," dated June 10, 2024 (AKCA Rebuttal Brief); and Masterbrand's Letter, "Rebuttal Brief," dated June 10, 2024 (Masterbrand Rebuttal Brief).
[20] *See* GOC Case Brief at 7-11.

demonstrate non-use of the program.[21]  Ancientree and Craft33 raised similar arguments for consideration in the final results.[22]  Ancientree explained that it never applied for or received benefits under the EBCP and the information provided by the GOC corroborated its statement.[23]  Further, Ancientree claimed that the information provided by over half of its U.S. customers also demonstrated non-use of the program.[24]  Based on this information, Ancientree requested for the final results that Commerce calculate customer-specific EBCP rates based on the level of cooperation by its U.S. customers in responding to the EBCP supplemental questionnaire.[25]

In their rebuttal briefs, AKCA and Masterbrand argued that Commerce should make no changes to its treatment of the EBCP for the final results.[26]  Both these parties claimed that the GOC failed to provide critical information necessary to find program non-use.[27]  Further, they argued that Ancientree's inability to provide complete information for each of its U.S. customers warranted the application of AFA for benefit, because such information must be analyzed to find non-use.[28]

In the *2022 AR Final Results*, Commerce determined, based on AFA, that Ancientree used and benefited from the EBCP because the GOC and Ancientree failed to adequately respond to Commerce's requests for information about the program.[29]  Specifically, Commerce found that the program was used, despite certifications from the respondents' U.S. customers claiming non-use,[30] because the GOC failed to:  (1) provide adequate explanation of the

---

[21] *Id.*
[22] *See* Ancientree Case Brief at 4-8; *see also* Craftt33 Letter in Lieu of Brief at 1-2.
[23] *See* Ancientree Case Brief at 4-7.
[24] *Id.* at 7-8.
[25] *Id.*
[26] *See* AKCA Rebuttal Brief at 2-11; *see also* Masterbrand Rebuttal Brief at 12-18.
[27] *See* AKCA Rebuttal Brief at 3-11; *see also* Masterbrand Rebuttal Brief at 12-16.
[28] *See* AKCA Rebuttal Brief at 9; *see also* Masterbrand Rebuttal Brief at 16-18.
[29] *See 2022 AR Final Results* IDM at Comment 2.
[30] *See* Ancientree IQR at 19 and Exhibit 15.

operations of the program; (2) provide the 2023 revisions to the administrative rules regulating the program (including information concerning the elimination of a two million dollar contract threshold between the respondents and their customers for participation in the EBCP); (3) provide a list of partner/correspondent banks that the GOC relies on as intermediaries in implementing the program; and (4) Ancientree was unable to provide complete information regarding the financing activities of each of its U.S. customers.[31]  Commerce concluded that this information was necessary to verify the respondents' claims that neither they, nor their U.S. customers, had used or benefited from the EBCP.[32]  Ancientree and Craft33 challenged Commerce's finding, based on AFA, that Ancientree received benefits under the EBCP.

## III.    REVISED SUBSIDY RATES

### A.  Ancientree's Overall Subsidy Rate

We recalculated Ancientree's total subsidy rate by relying on a pro-rata amount for the EBCP subsidy rate.  This approach is consistent with the Court's directive in *Dalian Meisen III* and Commerce's calculations in *Dalian Meisen III* Redetermination.[33]  The calculation of Ancientree's revised rate is shown in **Table 1**, below:

---

[31] *See 2022 AR Preliminary Results* PDM at 17-18, unchanged in *2022 AR Final Results*.
[32] *Id.*
[33] *See Dalian Meisen Woodworking Co., Ltd. v. United States,* 719 F.Supp.3d 1322, 1337-38 (CIT 2024) (*Dalian Meisen III*); *see also* Final Results of Redetermination Pursuant to Court Remand, *Dalian Meisen Woodworking Co., Ltd. v. United States*, Court No. 20-00110, Slip Op. 24-83 (CIT July 22, 2024), dated August 5, 2022 (*Dalian Meisen III* Redetermination) (for each customer whose non-use of the EBCP was verified Commerce must determine a customer-specific rate that excludes a subsidy amount for the EBCP); *see also Dalian Meisen Woodworking Co., Ltd. v. United States*, 788 F.Supp.3d 1354 (CIT 2025) (*Dalian Meisen IV*) (sustaining the *Dalian Meisen III* Redetermination).

| TABLE 1 | | | |
|---|---|---|---|
| COLUMN A | COLUMN B | COLUMN C | COLUMN D |
| | 2022 Final Results Cash Deposit Rates | EBCP Adjustment Factor; % of sales of companies that did not provide requested information | Revised Cash Deposit Rate |
| | | 38.47% | |
| Export Buyer's Credit - AFA | 6.28% | | 2.42% |
| Policy Loans | 0.02% | | 0.02% |
| Tax Offsets for Research and Development Under the Enterprise Income Tax Law | 0.84% | | 0.84% |
| Income Tax Reductions Under Article 28 of the Enterprise Income Tax | 0.01% | | 0.01% |
| Electricity for LTAR | 0.28% | | 0.28% |
| Land Use Rights for LTAR 2022 | 0.88% | | 0.88% |
| Plywood for LTAR | 0.39% | | 0.39% |
| Sawn Wood for LTAR | 1.48% | | 1.48% |
| Particleboard for LTAR | 0.01% | | 0.01% |
| Fiberboard for LTAR | 1.44% | | 1.44% |
| Fair Trade Grant 2021 | 0.12% | | 0.12% |
| Grant for Overseas Exhibitions | 0.03% | | 0.03% |
| Canton Fair Subsidy | 0.01% | | 0.01% |
| Funds for 2021 China cross-border e-commerce exhibition and support for enterprise website construction | 0.04% | | 0.04% |
| Fair Trade Grant 2022 | 0.09% | | 0.09% |
| 2021 Advanced Manufacturing Support Fund | 0.07% | | 0.07% |
| **Total *Ad Valorem* Subsidy Rate** | **11.99%** | | **8.13%** |

Column A lists each of the programs countervailed by Commerce in the underlying administrative review.[34]  Column B provides the program-specific subsidy rates applied in the *2022 AR Final Results*.[35]

We are revising the Ancientree EBCP rate to only include a portion of the total EBCP rate (which was 6.28 percent).  Specifically, we pro-rated the program rate to reflect the proportion of Ancientree's POI sales to U.S. customers that did not participate in our administrative review proceeding.  As detailed above, Commerce did not receive the requested loan information from some of Ancientree's U.S. customers.  As calculated in Column C, these customers accounted for approximately 38.47 percent of Ancientree's sales, by value, during the POR.[36]  Accordingly, we applied this percentage as an adjustment factor to the EBCP rate and, finally, recalculated the total subsidy rate for Ancientree considering the revised EBCP rate.[37] The resulting new EBCP rate is in Column D.

---

[34] *See 2022 AR Final Results.*
[35] *Id.*
[36] *See* Ancientree EBC SQR at Exhibit 1.
[37] 38.47 percent of 6.28 percent is 2.42 percent.

With respect to this revised Ancientree cash deposit rate (8.13 percent), we note that the statutory deadline for the final results of the 2023 administrative review of the order is currently March 9, 2026. Ancientree is a mandatory respondent in that review. Accordingly, Ancientree's revised cash deposit rate calculated as a result of this remand will be superseded by the cash deposit rate assigned to Ancientree based on the final results of the 2023 administrative review.

## B. Customer-Specific Rates

Commerce created customer-specific rates for Ancientree's U.S. customers, as provided in **Table 2** below.[38] Column A lists each customer and Column B lists the revised subsidy rate on a customer-specific basis, *i.e.*, including the 6.28 percent EBCP rate for customers that did not provide the requested loan information, and removing the 6.28 percent EBCP rate for those that demonstrated non-use of the program. As such, if the Court sustains these remand results, to effectuate the cash deposit rates based on the above, we intend to send customer-specific liquidation instructions only for this review period, as appropriate.[39] If there were other entries by importers/customers not listed in **Table 2** below, for which Ancientree produced and exported subject merchandise during the POR, we intend to liquidate these entries at the 11.99 percent rate.

---

[38] *Id.* for list of companies.
[39] *See* Memorandum, "Release of Draft Liquidation Customs Instructions Regarding Customer-Specific Rates," dated concurrently with this draft remand redetermination.

| TABLE 2 | | |
|---|---|---|
| COLUMN A | | COLUMN B |
| Customer Name | | Customer Specific Rate |
| [ | ] | 5.71% |
| [ | ] | 5.71% |
| [ | ] | 5.71% |
| [ | ] | 5.71% |
| [ | ] | 5.71% |
| [ | ] | 5.71% |
| [ | ] | 5.71% |
| [ | ] | 5.71% |
| [ | ] | 5.71% |
| [ | ] | 5.71% |
| [ | ] | 5.71% |
| [ | ] | 5.71% |
| [ | ] | 5.71% |
| [ | ] | 5.71% |
| [ | ] | 11.99% |
| [ | ] | 11.99% |
| [ | ] | 5.71% |
| [ | ] | 11.99% |
| [ | ] | 11.99% |
| [ | ] | 11.99% |
| [ | ] | 11.99% |
| [ | ] | 11.99% |
| [ | ] | 11.99% |
| [ | ] | 11.99% |
| [ | ] | 11.99% |
| [ | ] | 11.99% |
| [ | ] | 11.99% |
| [ | ] | 11.99% |
| [ | ] | 11.99% |
| [ | ] | 11.99% |
| [ | ] | 11.99% |
| [ | ] | 11.99% |
| [ | ] | 11.99% |
| [ | ] | 11.99% |
| [ | ] | 11.99% |
| [ | ] | 11.99% |

While Commerce computed the rates in Column B, we have not relied on those rates to establish *prospective* customer-specific cash deposit rates for several reasons. First, the Act requires Commerce to determine a single subsidy rate for each investigated respondent, and, thus, it would be inappropriate for Commerce to establish numerous cash deposit rates for

Ancientree here.[40]  Second, we must adhere to our regulations regarding the treatment of proprietary information.  Cash deposit rates are inherently public in nature.  Because they form the basis for the estimated duties collected at the border, importers and other members of the public must have access to them; for this reason, Commerce notifies the public of these rates via their publication in the *Federal Register*.  Here, however, the revised rates necessarily contain proprietary information, *i.e.*, the identity of particular customers.[41]  Therefore, if Commerce were to publish these rates in the context of an amended final determination, it would reveal proprietary information to the public in violation of the Trade Secrets Act.[42]

That said, we recognize that cash deposit rates serve two purposes:  (1) they establish the amounts to be collected in estimated deposits of CVDs, as discussed above; and (2) they also form the basis for the assessment of final CVDs where no party requests an administrative review of the associated entries.  In this redetermination, neither of these two purposes would be served by customer-specific cash deposit rates because the 2023 administrative review of the order will establish a new cash deposit rate for Ancientree.  This means the appropriate course of conduct is to send customer-specific liquidation instructions only for this review period.

Entries made on or after January 1, 2023, are not addressed in this remand because they are covered by the 2023 administrative review of the order, in which Ancientree is a mandatory respondent.[43]  Thus, any assessment made with respect to those entries will be at the rates determined in the 2023 administrative review.

---

[40] *See* section 705(c)(1)(B)(i)(I) of the Act, which states Commerce "shall … determine *an estimated individual countervailable subsidy rate* for each exporter and producer individually investigated" (emphasis added).
[41] *See* 19 CFR 351.105(c)(6) (noting that Commerce "normally will consider the following factual information to be business *proprietary* information, if so designated by the submitter ... Names of particular customers").
[42] *See* 18 U.S.C. § 1905.
[43] *See Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: Preliminary Results and Partial Rescission of Countervailing Duty Administrative Review; 2023*, 90 FR 30860 (July 11, 2025) at Memorandum, "Respondent Selection," dated July 10, 2024.

### C. Non-selected Rates

No party to this litigation argued for a change to the rates for non-selected companies in the underlying administrative review.  Accordingly, we made no changes to the rates assigned to the non-selected companies in this remand redetermination.

## IV.    INTERESTED PARTY COMMENTS

On January 23, 2026, we issued the Draft Results to interested parties.[44]  On January 30, 2026, the petitioner and Craft33 Products, LLC (Craft33) submitted comments on the Draft Results.[45]

### Comment:    Whether Commerce Properly Reconsidered the Application of Adverse Facts Available with Respect to the EBCP for Ancientree

*Petitioner's Comments:*

The following is a verbatim summary of the argument submitted by the petitioner.[46]  For further details, *see* Petitioner Comments at 2-3 (citations omitted):

> Commerce should continue to find that Ancientree benefited from the EBCP based on the application of AFA due to the failure of the Government of China (GOC) to fully respond to Commerce's requests for information.  The GOC's failure to provide this information unlawfully shifts the burden of providing information from itself to U.S. importers who are not parties to this proceeding, and ensures that the GOC benefits from its decision to not cooperate fully in this review.

> Commerce should decline to adhere to the rationale provided in *Dalian Meisen.* Instead, Commerce should apply the court's finding in *Fujian Yinfeng*, where the CIT upheld Commerce's determination to apply AFA due to the lack of verifiable information on the record to fill the gap in the record created by the GOC regarding the EBCP.

> Commerce had no legal basis to request a voluntary remand, and the {Draft Results} is not supported by substantial evidence and is not in accordance with law. The {Draft Results} ignores GOC's noncooperation, and how this noncooperation

---

[44] *See* Draft Results of Redetermination Pursuant to Court Remand, *The Ancientree Cabinet Co., Ltd., et. al. v. United States, Consol. Court No. 24-00223 (CIT September 30, 2025)*, issued January 23, 2026 (Draft Results).
[45] *See* Petitioner's Letter, "Comments on Draft Redetermination Pursuant to Court Remand," dated January 30, 2026 (Petitioner Comments); and Craft33's Letter, "Comments on Craft33 Products, LLC on Draft Results of Redetermination Pursuant to Court Remand," dated January 30, 2026 (Craft33 Comments).
[46] *See* Petitioner Comments at 2.

by itself is a sufficient basis for Commerce to apply AFA. Further, by reducing the EBCP rate from 6.28 percent to 2.42 percent, Commerce has allowed the GOC to obtain a more favorable rate by failing to cooperate than if it would have obtained through full cooperation.

Commerce's customer-specific rates have no basis in the statute or Commerce's regulations. The statute provides that Commerce "shall … determine an estimated individual countervailable subsidy rate for each exporter and producer individually investigated." Per the Supreme Court's holding in *Loper Bright*, the "best interpretation of the statute cannot mean establishing multiple countervailable subsidy rates for different customers. Thus, Commerce's calculation of multiple customer-specific subsidy rates violates the statute.

Further, Commerce's regulations differ for assessment purposes in antidumping and countervailing duty reviews. Only in an antidumping duty administrative review will Commerce "normally {} calculate an assessment rate for each importer of subject merchandise covered by the review," which can result in importer/customer-specific dumping rates. This provision does not apply to countervailing duty reviews, where Commerce "normally will instruct U.S. Customs and Border Protection to assess countervailing duties by applying the rates included in the final results of the review to the entered value of the merchandise." There is no provision for the calculation of importer/customer specific subsidy rates in reviews of countervailing duty orders.

*Craft33's Comments:*

The following is a verbatim summary of the argument submitted by Craft33.[47] For further details, *see* Craft33 Comments at 2-3 (citations omitted):

> {Commerce} properly reconsidered its application of adverse facts available (AFA) for the EBCP benefit to Craft33 and other Ancientree customers who demonstrated non-use through substantial evidence on the record. The {Draft Results} align with controlling precedent (including *Dalian Meisen*) by deducting the EBCP subsidy rate from customer-specific assessment rates where non-use was verified. Craft33's assessment rate now properly excludes the full 6.28 {percent} attributable to the EBCP. Accordingly, Craft33 requests that {Commerce} adopt the {Draft Results} as final and apply a 5.71 {percent} customer-specific assessment rate to Craft33's entries during the POR.

**Commerce's Position:**

We continue to find it appropriate for Commerce to calculate revised subsidy rates for

each of Ancientree's U.S. customers based on whether they demonstrated non-use of the

---

[47] *See* Craft33 Comments at 2-3.

program.  This approach is consistent with *Dalian Meisen III*, which involved the same CVD proceeding, the same parties, and virtually the same issues and facts regarding the treatment of the EBCP.

In its comments, the petitioner argues that Commerce should continue to find that Ancientree benefited from the EBCP based on the application of AFA due to the failure of the GOC to fully respond to Commerce's requests for information.  In comparison, Craft33 argues that Commerce properly reconsidered its application of AFA for the EBCP benefit, consistent with *Dalian Meisen III*, to Craft33 and other Ancientree customers who demonstrated non-use through substantial evidence on the record.  We agree with Craft33.

The petitioner argues that Commerce's determination in the underlying administrative review to apply AFA based on the GOC's failure to cooperate was supported by substantial evidence and was in accordance with law and, therefore, there was never a valid legal basis for Commerce to request a voluntary remand.[48]  In *Dalian Meisen III*, Commerce faced the exact same issue as in this case, with the Court directing the methodological approach used in that redetermination.  The Court in *Dalian Meisen IV*, rejected the same arguments made by petitioner in this remand, noting:

> not only was the use of adverse facts available not supported, but even the use of neutral facts available was not supported by substantial evidence because non-use was actually demonstrated by the evidence on the record.  For those of Ancientree's customers where that was done, there were no gaps in the record.[49]

Because the facts in this redetermination are virtually identical to the facts that resulted in our approach in *Dalian Meisen III* Redetermination, Commerce had a valid legal basis to request

---

[48] *See* Petitioner Comments at 6.
[49] *See Dalian Meisen IV,* 788 F.Supp.3d at 1379.

a voluntary remand so that we can follow the Court-directed, methodological approach in *Dalian Meisen III* Redetermination.

Next, the petitioner argues that the GOC failed to provide requested information and shifted the burden of providing that information to the U.S. importers, resulting in the GOC benefiting from its non-cooperation.[50]  Accordingly, to ensure that the GOC does not benefit from its non-cooperation, the petitioner requests that Commerce continue to use AFA to find that Ancientree benefited from the EBCP.[51]  The Court in *Dalian Meisen III* rejected the argument that the GOC's refusal to provide requested information created a gap in the record when other information on the record was available, and noted that because no gap was created, the use of AFA was not directed by statute.[52]  Specifically, while the Court recognized that the GOC failed to fully participate,[53] it determined that there was no basis to apply AFA with respect to those customers for which Commerce successfully verified the information regarding non-use.[54] Therefore, it directed Commerce to recalculate the Ancientree rate and the rates for its U.S customers.[55]

The petitioner's citations to court precedent are inapplicable to the facts here.  The petitioner's citation to *Fujian Yinfeng* is inapposite as Commerce did not issue EBCP supplemental questionnaires in that proceeding, meaning there was no information available on the record capable of filling the gap caused by the GOC's non-cooperation.[56]  Further, the

---

[50] *See* Petitioner Comment at 6-8.
[51] *Id.*
[52] *See Dalian Meisen III* 719 F.Supp.3d at 1337.
[53] *Id.* (holding that "the use of adverse facts available is authorized based on China's failure to cooperate"); *see also Second Remand Order* at 16 ("Here, there is no serious dispute that China failed to act to 'the best of its ability' to comply with Commerce's requests for information, specifically with respect to the operation of the {EBCP}").
[54] *Id.* at 1335-36; *see also Dalian Meisen III* Redetermination at 19.
[55] *See Dalian Meisen III*, 719 F.Supp.3d at 1335-36; *see also Dalian Meisen III* Redetermination at 19.
[56] *See* Petitioner Comment at 6-8; *see also Fujian Yinfeng Imp & Exp Trading Co. v. United States*, Ct. No. 21-00088, Slip Op. 22-107, at *2 (CIT September 13, 2022) (*Fujian Yinfeng*) ("Yinfeng reported no receipt of EBCP benefits and submitted certifications of non-use from its customers").

petitioner's citation to *Cooper* is similarly unavailing, as there were "no certifications or other customer information…on the record" there, unlike here.[57]  Because there is verifiable information on the record here which fills the gap created by the GOC's non-cooperation, these final results of redetermination are supported by substantial evidence and are not contrary to court precedent.

As noted above, the facts in the underlying administrative review are virtually the same as those presented in *Dalian Meisen III*.  Specifically, while the GOC did not provide the requested information regarding the EBCP, Ancientree stated that neither it nor its U.S. customers used the EBCP.  In addition, as discussed above, all of Ancietree's U.S. customers provided certifications and many provided verifiable responses to our EBCP supplemental questionnaires that evidenced non-use of the EBCP.  In light of the Court's ruling in *Dalian Meisen III*, and consistent with the Court-directed methodology in *Dalian Meisen III Redetermination*, we find that we are able to rely on the information provided by Ancientree's U.S. customers that responded to our EBCP supplemental questionnaires as verifiable evidence that those U.S. customers did not use the EBCP.  Accordingly, we calculated company-specific subsidy rates consistent with the approach in *Dalian Meisen III* Redetermination.  For those U.S. customers that did not provide a response to our EBCP supplemental questionnaire, we continued to apply AFA to find that they used the EBCP.  We note that the petitioner argues that Commerce never addressed in the Draft Results our finding in the *2022 AR Final Results*, that the GOC failed to cooperate.  The GOC's non-cooperation would not change the result here, however, as even for non-cooperating parties, Commerce's AFA applications must arrive at "a reasonably accurate estimate of the respondent's actual rate."[58]  While the petitioner notes that

---

[57] *See Cooper (Kunshan) Tire Co. v. United States*, 610 F.Supp.3d 1287, 1298 (CIT 2022) (*Cooper*).
[58] *See F.Ili De Cecco Di Filippo Fara S. Martino S.p.A v. United States*, 216 F.3d 1027, 1032 (Fed. Cir. 2000).

the purpose of section 776(b) of the Act is to ensure that parties do not obtain a more favorable result by failing to cooperate than if they had cooperated fully, "in the case of a cooperating party, Commerce cannot confine itself to a deterrence rationale and also must carry out a case-specific analysis of the applicability of deterrence and similar policies."[59]  Commerce is not barred from drawing adverse inferences against a non-cooperating party that have collateral consequences for a cooperating party, but when calculating the rate for a cooperating party such as Ancientree, Commerce is obligated to avoid impacting respondents to the extent practicable by examining the record for replacement information.[60]  The record of this case contains information that allows Commerce to verify the non-use of the EBCP by several of Ancientree's U.S. customers.  Moreover, as discussed above, the Court in *Dalian Meisen III*, has already expressly rejected the argument that because the GOC failed to provide the requested information, we should apply AFA with respect to Ancientree its U.S. customers that provided the EBCP information requested of them.[61]

Finally, the petitioner asserts that the customer-specific rates Commerce calculated in the Draft Results are not in accordance with law.[62]  As we noted in the Draft Results, the Act requires Commerce to determine a single subsidy rate for each investigated respondent.[63]  Similarly, various aspects of Commerce's regulations make customer/importer-specific cash deposit rates impermissible.[64]  Nonetheless, it bears noting that Commerce will not publish customer-specific cash deposit rates in this redetermination; instead we computed a single weighted-average subsidy rate for Ancientree.  Because the Act provides no bar to assessing

---

[59] *See* Petitioner Comments at 7; *see also Mueller Comercial de Mexico, S. de R.L. De C.V. v. United States,* 753 F.3d 1227, 1234 (Fed. Cir. 2014).
[60] *See Guizhou Tyre v. United States*, 348 F.Supp. 3d 1263, 1271 (CIT 2018).
[61] *See Dalian Meisen III*, 719 F.Supp.3d at 1335-36; *see also Dalian Meisen III* Redetermination at 19.
[62] *See* Petitioner Comments at 9-11.
[63] *See* pages 11-12, *supra* (citing section 705(c)(1)(B)(i)(I) of the Act).
[64] *Id*. (citing 19 CFR 351.105(c)(6)).

countervailing duties on entries on a customer/importer-specific basis, and consistent with *Dalian Meisen III* Redetermination,[65] we disagree that our determination fails to comport with the law.

Commerce's application of this alternate method, *i.e.*, determining customer-specific rates which will serve as the basis for liquidation in the absence of a review, constitutes the most accurate and feasible approach, and is consistent with the methodological approach in *Dalian Meisen III* Redetermination and sustained in *Dalian Meisen IV*.

## V.    FINAL RESULTS OF REDETERMINATION

As a result of this voluntary remand, we calculated a revised subsidy rate for each Anciantree U.S. customer that provided complete information regarding its financing activities, excluding a subsidy amount for the EBCP. We also recalculated Anciantree's total rate on a pro-rata basis to reflect this determination. We made no modifications to the applicable rates for Anciantree's U.S. customers that did not provide complete information.

Should the Court affirm these final results of redetermination, Commerce will publish a notice of amended final determination in the *Federal Register* and issue appropriate customs instructions to U.S. Customs and Border Protection.

2/17/2026

X ~~Chris J Abbott~~

Signed by: CHRISTOPHER ABBOTT

Christopher Abbott
Deputy Assistant Secretary
  for Policy and Negotiations,
  performing the non-exclusive functions and duties
  of the Assistant Secretary for Enforcement and Compliance

---

[65] *See Dalian Meisen III* Redetermination at 19.