UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE THE HONORABLE RICHARD K. EATON, SENIOR JUDGE

| | |
|---|---|
| THE ANCIENTREE CABINET CO., LTD., )<br><br>*Plaintiff,* )<br><br>and )<br><br>CABINETS TO GO, LLC, )<br><br>*Plaintiff-Intervenors*, )<br>v. )<br><br>UNITED STATES, )<br><br>*Defendant*, )<br><br>and )<br><br>AMERICAN KITCHEN CABINET ALLIANCE, )<br><br>*Defendant-Intervenor*. ) | Court No. 24-00223<br><br>PUBLIC DOCUMENT |

**DEFENDANT-INTERVENOR'S COMMENTS ON REMAND REDETERMINATION**

Luke A. Meisner
Justin M. Neuman*
SCHAGRIN ASSOCIATES
900 7th St. NW, Suite 500
Washington, DC 20001
(202) 223-1700

*Counsel to the
American Kitchen Cabinet Alliance*

*Admitted only in Ohio. Practice limited to
matters before federal courts and agencies.

Date:  March 19, 2026

PUBLIC DOCUMENT

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................... ii

I.    Summary .................................................................................................. 2

II.   Commerce's Final Results Were Supported by Substantial Evidence and in
      Accordance with Law and Should Have Been Upheld ............................................... 3

III.  Commerce's Remand Redetermination Is Neither Supported by Substantial
      Evidence Nor in Accordance with Law .................................................................... 8

      A.    Commerce's *Remand Redetermination* Ignores the GOC's Failure to
            Cooperate ......................................................................................................... 8

      B.    Commerce's Customer-Specific Rates Have No Basis in the Statute or
            Commerce's Regulations and Practice ........................................................... 9

IV.   Conclusion ............................................................................................... 12

i

PUBLIC DOCUMENT

# TABLE OF AUTHORITIES

**Cases**

*Assan Aluminyum Sanayi ve Ticaret A.S. v. United States*, 624 F. Supp. 3d 1343 (Ct. Int'l Trade 2023) ................................................................................................................. 11

*Baroque Timber Indus. (Zhongshan) Co. v. United States*, 776 F. Supp. 3d 1290 (Ct. Int'l Trade 2025) ................................................................................................................. 5, 6

*Both-Well (Taizhou) Steel Fittings, Co. v. United States*, 557 F. Supp. 3d 1327 (Ct. Int'l Trade 2022) ................................................................................................................. 5

*Chevron U. S. A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) ........... 12

*Cooper (Kunshan) Tire Co. v. United States*, 610 F. Supp. 3d 1287 (Ct. Int'l Trade 2022) ...... 4, 6

*Dalian Meisen Woodworking Co. v. United States*, 788 F. Supp. 3d 1354 (Ct. Int'l Trade 2025).. 1

*Essar Steel Ltd. v. United States*, 34 C.I.T. 1057, 1070, 721 F. Supp. 2d 1285 (2010).................. 4

*Ethicon, Inc. v. Quigg*, 849 F.2d 1422 (Fed. Cir. 1988) ................................................................. 14

*Fine Furniture (Shanghai) Ltd. v. United States*, 748 F.3d 1365 (Fed. Cir. 2014) .............. 4, 5, 11

*Fujian Yinfeng Imp & Exp Trading Co. v. United States*, No. 21-00088, 2022 WL 4180886 Ct. Int'l Trade Sept. 13, 2022) ................................................................................................. 6

*Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024) ................................................. 12

*Risen Energy Co. v. United States*, 665 F. Supp. 3d 1335 (Ct. Int'l Trade 2023) ......................... 3

*Yama Ribbons and Bows Co. v. United States*, 611 F. Supp. 3d 1394 (2022)............................... 6

*Zhaoyuan Junbang Trading Co. v. United States*, No. 24-00180, 2026 WL 464688 (Ct. Int'l Trade Feb. 18, 2026) ................................................................................................. 7

*Zhejiang Junyue Standard Part Co. v. United States*, 578 F. Supp. 3d 1280 (Ct. Int'l Trade 2022) ................................................................................................................. 5

**Statutes**

19 U.S.C. § 1671d(c)(1)(B)(i)(I)................................................................................................... 9

19 U.S.C. § 1671e................................................................................................................... 11

19 U.S.C. § 1671e(a)(1)............................................................................................................ 11

19 U.S.C. § 1675(a)(2)(C) ................................................................................................... 9, 11

PUBLIC DOCUMENT

19 U.S.C. § 1677e(a)(2) ............................................................................................................ 7

19 U.S.C. § 1677e(b) ................................................................................................................ 8

19 U.S.C. § 1677f-1(e)(1) ........................................................................................................ 8

**Other Authorities**

Statement of Administrative Action accompanying the Uruguay Round Agreement Act, H.R. Doc. No. 103–316, vol. 1, at 870, *reprinted in* 1994 U.S.C.C.A.N. 4040 .................................. 9

*Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: Final Results of Countervailing Duty Administrative Review; 2022*, 89 Fed. Reg. 88,962 (Dep't Commerce Nov. 12, 2024) ............................................................................... 4, 5, 7

World Trade Organization Agreement on Subsidies and Countervailing Measures, 1869 U.N.T.S. 14 (Apr. 15, 1994) ................................................................................................ 2, 4

**Regulations**

19 C.F.R. §351.212(b)(1) ........................................................................................................ 10

19 C.F.R. §351.212(b)(2) ........................................................................................................ 10

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE THE HONORABLE RICHARD K. EATON, SENIOR JUDGE

| | | |
|---|---|---|
| THE ANCIENTREE CABINET CO., LTD., | ) | |
| *Plaintiff,* | ) | |
| and | ) | |
| CABINETS TO GO, LLC, | ) | |
| *Plaintiff-Intervenors*, | ) | Court No. 24-00223 |
| v. | ) | |
| UNITED STATES, | ) | PUBLIC DOCUMENT |
| *Defendant*, | ) | |
| and | ) | |
| AMERICAN KITCHEN CABINET ALLIANCE, | ) | |
| *Defendant-Intervenor*. | ) | |

**DEFENDANT-INTERVENOR'S COMMENTS ON REMAND REDETERMINATION**

Pursuant to this Court's September 30, 2025 order granting a voluntary remand in the aforementioned proceeding (ECF 37), and the Court's December 23, 2025 amended scheduling order (ECF 42), Defendant-Intervenor American Kitchen Cabinet Alliance ("AKCA") submits the following response in opposition to the February 17, 2026 remand redetermination ("*Remand Redetermination*") (ECF 43) issued by the U.S. Department of Commerce ("Commerce") in the above captioned action. As discussed below, while Commerce's *Remand Redetermination* is consistent with its prior decision as upheld in *Dalian Meisen Woodworking Co. v. United States*, 788 F. Supp. 3d 1354 (Ct. Int'l Trade 2025), it is neither supported by substantial evidence nor otherwise in accordance with law. Rather than recalculating the subsidy rate for The Ancientree Cabinet Co., Ltd. ("Ancientree") to reduce the rate for the Export Buyer's Credit Program

1

PUBLIC DOCUMENT

("EBCP"), Commerce should have continued to apply total adverse facts available ("AFA") to calculate a program rate of 6.28 percent for the EBCP and apply that rate to all of Ancientree's customers.

## I.       Summary

The Government of China ("GOC") is following a strategy of noncooperation that appears to be succeeding in many countervailing duty cases that are appealed to the Court of International Trade ("CIT"). Under both U.S. countervailing duty law and the World Trade Organization's Agreement on Subsidies and Countervailing Measures ("SCM"), the GOC is expected to provide information regarding the subsidies it administers, as well as information regarding the recipients of those subsidies, because the GOC is in the best position to provide such information. The GOC has refused to provide this information for the EBCP, a loan program that supports Chinese exports by financing foreign buyers, including U.S. purchasers. Both U.S. law and the SCM provide that Commerce is entitled to apply AFA under these circumstances, and indeed should apply AFA under these circumstances, to ensure that the GOC does not benefit from its failure to cooperate and to induce the GOC's cooperation in future investigations.

Through both the GOC's refusal to cooperate and certain decisions issued by the CIT, the GOC has managed to shift the burden of producing relevant information from itself to its exporters' U.S. customers, who must prove that they have not availed themselves of the EBCP when purchasing subject merchandise. As Commerce has predicted, due to factors such as the large number of U.S. customers and the GOC's failure to provide relevant information such as the correspondent banks involved in the EBCP, collecting and verifying information from U.S. customers has been extremely onerous for Commerce, akin to looking for a needle in a haystack.

2

The GOC's shifting of the burden from itself to U.S. customers also requires the U.S. customers to subject themselves to Commerce's questioning and verification procedures even though they are not parties to the agency's countervailing duty investigation.

The GOC's strategy is succeeding. *See, e.g.*, *Risen Energy Co. v. United States*, 665 F. Supp. 3d 1335, 1343 (Ct. Int'l Trade 2023). After the burden of providing relevant information shifts to U.S. customers, many of them fail to provide the information or fail to cooperate fully with Commerce's verification process. *See id.* However, instead of laying the blame at the feet of the GOC, the CIT blames Commerce for being "unreasonable" and for "imped{ing} good faith efforts by respondents to comply." *Id.* As a result, Commerce is prohibited from countervailing the EBCP as a subsidy based on the GOC's refusal to provide relevant information. This outcome is contrary to U.S. law and rewards the GOC for its failure to cooperate. The AKCA respectfully submits that this case should not end with such an outcome.

Commerce's *Remand Redetermination* compounds the problems discussed above. In a misguided attempt to use the customers' information regarding the EBCP to calculate *multiple* customer-specific subsidy rates, Commerce has violated the statute's requirement that the agency calculate a *single* subsidy rate for each foreign exporter – both for purposes of collecting cash deposits and for assessing duties on imports that have already entered the U.S. market.

## II.    Commerce's Final Results Were Supported by Substantial Evidence and in Accordance with Law and Should Have Been Upheld

Commerce's findings in the underlying administrative review were correctly decided and should have been upheld. In the final results of the 2022 administrative review of the countervailing duty order, Commerce determined that Ancientree and an additional respondent, Yixing Pengjia Cabinetry Co., Ltd., benefited from the EBCP based on the application of AFA due to the failure of the GOC to respond to Commerce's requests for information about the

3

PUBLIC DOCUMENT

subsidy program. *See Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: Final Results of Countervailing Duty Administrative Review; 2022*, 89 Fed. Reg. 88,962 (Dep't Commerce Nov. 12, 2024) ("*2022 Final Results*"), and accompanying Issues and Decision Memorandum ("IDM") at Comment 2. Under both U.S. countervailing duty law and the SCM, the GOC is expected to provide information regarding the subsidies it administers, as well as information regarding the recipients of those subsidies, because the GOC is in the best position to provide such information. *Cooper (Kunshan) Tire Co. v. United States*, 610 F. Supp. 3d 1287, 1303 (Ct. Int'l Trade 2022) (citing *Fine Furniture (Shanghai) Ltd. v. United States*, 748 F.3d 1365, 1369-70 (Fed. Cir. 2014); *Essar Steel Ltd. v. United States*, 34 C.I.T. 1057, 1070, 721 F. Supp. 2d 1285, 1296 (2010), *rev'd on other grounds by* 678 F.3d 1268 (Fed. Cir. 2012)). *See also* World Trade Organization Agreement on Subsidies and Countervailing Measures, 1869 U.N.T.S. 14 (Apr. 15, 1994) at Article 18.6. In the underlying review at issue in this case, the GOC refused to provide this information for the EBCP, a loan program that supports Chinese exports by financing foreign buyers, including U.S. purchasers. Both U.S. law and the SCM provide that Commerce is not only entitled, but also expected, to apply AFA under these circumstances to ensure that the GOC does not benefit from its failure to cooperate and to induce the GOC's cooperation in future investigations. *Fine Furniture*, 748 F.3d at 1373 ("Although it is unfortunate that cooperating respondents may be subject to collateral effects due to the adverse inferences applied when a government fails to respond to Commerce's questions, this result is not contrary to the statute or its purposes, nor is it inconsistent with this court's precedent.").

By failing to cooperate with Commerce's investigation into the EBCP, the GOC has managed to shift the burden of producing relevant information about a subsidy program that the GOC administers from itself to U.S. customers that have potentially benefited from this program.

Even though the GOC is in the best position to provide this information, it is now U.S. customers who must prove that they have not availed themselves of the EBCP when purchasing subject merchandise. As Commerce has predicted, due to factors such as the large number of U.S. customers and the GOC's failure to provide relevant information such as the correspondent banks involved in the EBCP, collecting and verifying information from U.S. customers has been extremely onerous for Commerce. IDM in *2022 Final Results* at Comment 2. *See also Both-Well (Taizhou) Steel Fittings, Co. v. United States*, 557 F. Supp. 3d 1327, 1336 (Ct. Int'l Trade 2022) ("Commerce states that it would be too onerous 'if not impossible' for it to verify the non-use certifications."); *Zhejiang Junyue Standard Part Co. v. United States*, 578 F. Supp. 3d 1280, 1286 (Ct. Int'l Trade 2022) ("A careful verification of respondents' non-use of this program without understanding the identity of these correspondent banks would be unreasonably onerous, if not impossible."). The GOC's shifting of the burden from itself to U.S. customers leaves Commerce without a sufficient basis, such as issuing further supplemental questions or even conducting verification, to find and confirm non-use for U.S. customers even though they are not parties to the agency's review proceeding. This turn of events has completely perverted the manner in which U.S. countervailing duty law is supposed to operate.

Significantly, the CIT has held more persuasively in other cases that Commerce is justified in applying AFA to find that respondents and their U.S. customers benefited from the ECBP based on the GOC's lack of cooperation where certain criteria are met. *See, e.g.*, *Baroque Timber Indus. (Zhongshan) Co. v. United States*, 776 F. Supp. 3d 1290, 1311-12 (Ct. Int'l Trade 2025) ("Commerce may apply AFA to a cooperative respondent if Commerce takes the following steps: (1) defines the gap in the record by explaining exactly what information is missing from the record necessary to verify non-use; (2) establishes how the withheld

5

information creates this gap by explaining the reason that the information the GOC refused to give was necessary to verify claims of non-use; and (3) shows that only the withheld information can fill the gap by explaining the reason that other information, on the record or accessible by respondents, is insufficient or impossible to verify."). Commerce identified the gap in the record in this proceeding, explained why this information was necessary, and demonstrated that alternative information was insufficient to fill this gap. Under similar scenarios, the Court consequently concluded that alternative information provided by respondent companies was insufficient to fill the gaps created in the record by the GOC's recalcitrance. *Id.* at 1313-14.

Similarly, in *Yama Ribbons and Bows Co. v. United States*, 611 F. Supp. 3d 1394 (2022), the CIT upheld Commerce's application of AFA due to the Chinese government's failure to provide necessary information regarding the ECBP, even though the Chinese respondent had provided evidence purporting to show that its customer did not use this program. The Court concluded that "Commerce must be afforded discretion to determine the scope of its inquiry in conducting reviews of countervailing duty orders, so long as it does so reasonably" and that "{h}ere, it was reasonable for Commerce to request information from the Chinese government to supplement and corroborate the information Yama provided to show that neither Yama nor its U.S. customers used the EBCP." *Id.* "But because the Chinese government made no effort to provide the requested information as it related specifically to the period of review, Commerce was within its authority in using an adverse inference that Yama benefitted from the EBCP during that period." *Id.* The information Commerce requested from the Chinese government "was missing from the record due to the failure of the Chinese government to make even a minimal effort to assist Commerce in confirming that Yama received no benefit from the EBCP during that year." *Id.* at 1402. The Court recognized that the record contained information to

6

support a finding that neither Yama nor its customers used the EBCP but reasoned that "Commerce was not required to consider that information determinative" and that it was reasonable for Commerce to consider the information it sought from the GOC "to be essential to its inquiry." *Id.*

This Court has continued to uphold this rationale. *See Zhaoyuan Junbang Trading Co. v. United States*, No. 24-00180, 2026 WL 464688, at *8-*10 (Ct. Int'l Trade Feb. 18, 2026). Indeed, just one month ago, the Court affirmed Commerce's decision to apply AFA to countervail the EBCP program based on the GOC's continued intransigence:

> The Court is satisfied that Commerce articulated the proper legal basis for its decision to use facts otherwise available based on the Government of China's actions, and Commerce supplied reasonable explanations…. Accordingly, the Court concludes that Commerce's decision to rely on facts otherwise available is in accordance with 19 U.S.C. § 1677(e)(a)(2) {*sic*} and supported by substantial evidence…. The Court concludes that Commerce did not fail to consider the evidence placed on the record by {the respondent}, nor did it overlook evidence that would have removed the collateral impact of Commerce's adverse inference with regard to the Government of China…. Commerce's determination that {the respondent} benefited from the Export Buyer's Credit Program was in accordance with law and supported by substantial evidence.

This was the right result, and is the result that should be reached in this case.

In sum, Commerce's determination in the *2022 Final Results* to apply AFA based on the GOC's failure to cooperate was supported by substantial evidence and in accordance with law. There was never any valid legal basis for the CIT to remand this determination back to Commerce. If the CIT does not correct this situation on its own, this case should be overturned by the Federal Circuit as being contrary to U.S. law in a way that is totally undermining any ability of Commerce to induce cooperation by the GOC in countervailing duty investigations.

7

**III.    Commerce's Remand Redetermination Is Neither Supported by Substantial Evidence Nor in Accordance with Law**

In the *Remand Redetermination*, Commerce revised the subsidy rate calculations to: (1) pro-rate the EBCP rate to reflect the proportion of Ancientree's sales to customers that did not participate in the administrative review, resulting in the EBCP rate falling from 6.28 percent to 2.42 percent; and (2) create customer-specific rates for Ancientree's customers based on their provision of information. *Remand Redetermination* at 6-10. As demonstrated below, each of these revisions is neither supported by substantial evidence nor in accordance with law.

**A.  Commerce's *Remand Redetermination* Ignores the GOC's Failure to Cooperate**

Commerce's *Remand Redetermination* is unlawful because it ignores the fact that the GOC failed to provide necessary information in this administrative review with respect to the EBCP. As the CIT has recognized in other cases, when Commerce decides not to apply AFA due to the agency's refusal to address evidence that a party has not cooperated to the best of its ability, the decision is not supported by substantial evidence. *See Assan Aluminyum Sanayi ve Ticaret A.S. v. United States*, 624 F. Supp. 3d 1343, 1376-1378 (Ct. Int'l Trade 2023) (remanding Commerce's decision not to apply AFA when it was based on a factual finding that a respondent had cooperated to the best of its ability, and Commerce had failed to reconcile that factual finding with evidence that detracted from it). Commerce's decision in the *Remand Redetermination* goes out of its way to reward the GOC's failure to cooperate in this administrative review, instead providing a carve-out for certain of Ancientree's U.S. customers based on their conduct, despite these companies not even being interested parties to the proceeding. Thus, the *Remand Redetermination* is not supported by substantial evidence.

In addition, as the Federal Circuit has recognized, the purpose of 19 U.S.C. § 1677e(b) is to encourage future cooperation by "ensur{ing} that the party does not obtain a more favorable

8

result by failing to cooperate than if it had cooperated fully." *Fine Furniture*, 748 F.3d at 1373 (quoting Statement of Administrative Action accompanying the Uruguay Round Agreement Act, H.R. Doc. No. 103–316, vol. 1, at 870, *reprinted in* 1994 U.S.C.C.A.N. 4040, 4199). The GOC was a foreign government respondent in the CVD investigation and yet failed to provide requested information that was necessary for Commerce to analyze and calculate an accurate subsidy rate for the EBCP. *Id.* at 1367. By reducing the program rate from 6.28 percent to 2.42 percent, Commerce has allowed the GOC to obtain a more favorable outcome by failing to cooperate than it would have obtained through full cooperation. This result is in direct contravention to the statute, rendering the *Remand Redetermination* as not in accordance with law.

### B. Commerce's Customer-Specific Rates Have No Basis in the Statute or Commerce's Regulations and Practice

As Commerce itself explains in the *Remand Redetermination*, the statute "requires Commerce to determine a single subsidy rate for each investigated respondent, and, thus, it would be inappropriate for Commerce to establish numerous cash deposit rates for Ancientree here." *Remand Redetermination* at 9-10 (citing 19 U.S.C. § 1671d(c)(1)(B)(i)(I)). This is one of the reasons why Commerce only applied the customer-specific rates retrospectively in its assessment of duties but not prospectively through the cash deposit rate. *Id.* However, it was also inappropriate for Commerce to establish customer-specific rates on a retrospective basis.

The statute provides that Commerce "shall determine an *individual* countervailable subsidy rate for each known exporter or producer of the subject merchandise." 19 U.S.C. § 1677f-1(e)(1) (emphasis added). Furthermore, determinations in administrative reviews "shall be the basis for the assessment of countervailing… duties on entries of merchandise covered by the determination and for deposits of estimated duties. 19 U.S.C. § 1675(a)(2)(C). It would

9

PUBLIC DOCUMENT

already have been unreasonable under *Chevron U. S. A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) for Commerce to interpret this statutory language as permitting *multiple* subsidy rates for different customers instead of one *individual* subsidy rate for each exporter and producer. But now the Supreme Court has overturned *Chevron* and found that it "makes no sense to speak of a 'permissible' interpretation that is not the one the court, after applying all relevant interpretive tools, concludes is best." *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2266 (2024) ("*Loper Bright*"). There is just no way in the world that the "best" interpretation of the statutory phrase "individual countervailable subsidy rate for each known exporter" involves multiple countervailable subsidy rates for different customers. Thus, Commerce's calculation of multiple customer-specific subsidy rates in the *Remand Redetermination* violates the statute.

Commerce's regulations likewise do not offer any support for customer-specific subsidy rates. While 19 C.F.R. §351.212(b)(1) provides that Commerce "normally will calculate an assessment rate for each importer of subject merchandise covered by the review," which can result in importer/customer-specific dumping rates, this regulatory provision only applies to antidumping duties calculated in an administrative review for duty assessment purposes. 19 C.F.R. §351.212(b)(1). This provision does not apply to countervailing duty reviews such as the proceeding at issue here. In addition, the parallel sub-provision in the regulations for countervailing duty reviews states that Commerce "normally will instruct U.S. Customs and Border Protection to assess countervailing duties by applying the rates included in the final results of the review to the entered value of the merchandise." 19 C.F.R. §351.212(b)(2). In other words, there is no provision for the calculation of importer/customer-specific subsidy rates – even in reviews of countervailing duty orders.

10

Commerce offers feeble authority under the statute to calculate customer-specific subsidy rates. According to Commerce, it calculated a single cash deposit rate for Ancientree and only calculated customer-specific assessment rates "{b}ecause the Act provides no bar to *assessing* countervailing duties on entries on a customer/importer-specific basis… we disagree that our determination fails to comport with the law." *Remand Redetermination* at 16-17 (emphasis added). As an initial matter, the fact that a statute does not bar an agency from taking certain action does not mean that the agency is authorized to take that action. *See, e.g., Ethicon, Inc. v. Quigg*, 849 F.2d 1422 (Fed. Cir. 1988) (holding that Congress's silence with respect to the authority of the U.S. Patent and Trademark Office to stay patent reexamination proceedings was not the equivalent of a grant of such authority). More importantly, however, the countervailing duty statute explicitly states how Commerce must *assess* duties in 19 U.S.C. § 1671e – *i.e.*, the provision entitled "Assessment of duty." That provision states that Commerce must publish an order that "directs customs officers to assess a countervailing duty equal to the amount of the net countervailable subsidy determined or estimated to exist." 19 U.S.C. § 1671e(a)(1). Once an administrative review is completed, the rates established in the final results "shall be the basis for the assessment of countervailing… duties on entries of merchandise covered by the determination and for deposits of estimated duties." 19 U.S.C. § 1675(a)(2)(C). In other words, the countervailing duty rate that Commerce assesses must be "equal" to the countervailing duty that it determined to exist for the relevant foreign exporter following the completion of an administrative review. In light of *Loper Bright*, it is impossible to conclude that the best interpretation of the statute is that Commerce can calculate a countervailing duty rate that serves as the cash deposit rate for a foreign producer and a different countervailing duty rate that serves as the assessment rate for the relevant importers of that foreign producer's merchandise. The

11

assessment rate and cash deposit rate must be equal to the amount of countervailable subsidy that was determined in the underlying administrative review. Commerce's *Remand Redetermination* flouts this unambiguous statutory requirement.

The bottom line is that there is no legal basis in the statute, the regulations, or Commerce's practice to calculate customer-specific subsidy rates as Commerce has done in the *Remand Redetermination*. Commerce's decision to calculate and assess customer-specific subsidy rates is not in accordance with law and thus must be remanded.

## IV.    Conclusion

For the foregoing reasons, the AKCA respectfully requests that the Court hold that Commerce's *Remand Redetermination* is neither supported by substantial evidence nor in accordance with law and remand the redetermination back to the agency for further proceedings.

Respectfully submitted,

/s/ Luke A. Meisner
Luke A. Meisner
Justin M. Neuman*
SCHAGRIN ASSOCIATES
900 7th St. NW, Suite 500
Washington, DC 20001
(202) 223-1700

*Counsel to the*
*American Kitchen Cabinet Alliance*

*Admitted only in Ohio. Practice limited to matters before federal courts and agencies.

Date:  March 19, 2026

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing Comments on Commerce's Remand Redetermination contain 3,525 words (including text, quotations, footnotes, headings, and attachments) and therefore comply with the word limitation set forth in the Court's Chamber's Procedures. In preparing this certificate of compliance, I have relied upon the word count function of the word processing system used to prepare the brief.

Dated: March 19, 2026                              /s/ Luke A. Meisner
                                                            Luke A. Meisner