UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE RICHARD K. EATON, JUDGE

| | | |
|---|---|---|
| THE ANCIENTREE CABINET CO., LTD | ) | |
| Plaintiff, | ) | |
| | ) | |
| and | ) | Consol. Court No. 24-223 |
| | ) | |
| CRAFT33 PRODUCTS, LLC, | ) | |
| Consolidated-Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES, | ) | |
| Defendant. | ) | |
| | ) | |
| and | ) | |
| | ) | |
| AMERICAN KITCHEN CABINET ALLIANCE, | ) | |
| Defendant-Intervenor | ) | |

**PLAINTIFF'S REPLY COMMENTS IN SUPPORT OF REMAND REDETERMINATION**

Gregory S. Menegaz
Alexandra H. Salzman
Vivien Jinghui Wang
**INTER-GLOBAL TRADE LAW GROUP, PLLC**
Suite 1101
1156 Fifteenth Street, N.W.  20005
Tel: (202) 868-0300
email:  gmenegaz@igtlaw.com
*Counsel to Plaintiff*

Dated: April 20, 2026

**TABLE OF CONTENTS**

**I.      The Department Properly took Voluntary Remand to Change its Unlawful Original Final Results**.......................................................................................**1**

**II.     The Department's Remand Results are Supported by the Record and In Accordance with the Law**..............................................................................**6**

**III.    Conclusion and Prayer for Relief**.................................................................**8**

## TABLE OF AUTHORITIES

**Cases**

*Archer Daniels Midland Co. v. United States*, 917 F. Supp. 2d 1331 (Ct. Int'l Trade 2013) ..... 4-5

*Dalian Meisen Woodworking Co. v. United States*, 2022 Ct. Intl. Trade LEXIS 52................... 4-5

*Dalian Meisen Woodworking Co., Ltd. v. United States*, 788 F. Supp. 3d 1354 (Dep't Comm. 2025). ...................................................................................................................................7

*Diamond Sawblades Mfrs. Coalition v. United States*, 986 F.3d 1351 (Fed. Cir. 2021).................7

*Diamond Sawblades Manufacturers' Coalition v. United States*, 547 F. Supp. 3d 1323 (Ct Int'l Trade 2021) ...............................................................................................................................7

*Fine Furniture (Shanghai) Ltd. v. United States*, 748 F.3d 1365 (Fed. Circuit 2014). ............... 4-5

*Jiangsu Zhongji Lamination Materials Co. v. United States*, 405 F. Supp. 3d 1317 (Ct. Int'l Trade 2019)..................................................................................................................................4

*Jilin Forest Indus. Jinqiao Flooring Grp. Co. v. United States*, 519 F. Supp. 3d 1224 (Ct. Int'l Trade 2021) ............................................................................................................................. 4-5

*Yama Ribbons & Bows Co. v. United States*, 2023 Ct. Intl. Trade LEXIS 129...............................2

**Statutes & Regulations**

19 U.S.C. § 1671d(c)(1)(B) ...................................................................................................... 6-7

19 U.S.C. § 1673d(c)(1)(B) ...................................................................................................... 6-7

19 U.S.C. § 1677e ........................................................................................................................7

19 C.F.R. §351.212(b)(2)..............................................................................................................7

**Administrative Decisions**

*2,4-Dichlorophenoxyacetic Acid From the People's Republic of China: Final Affirmative Countervailing Duty Determination*, 90 Fed. Reg. 14,957 (April 7, 2025)....................................5

*Certain Brake Drums From the People's Republic of China: Final Affirmative Countervailing Duy Determination,* 90 Fed. Reg. 26,002 (June 18, 2025) ..............................................................5

*Wooden Cabinets and Vanities and Components Thereof From the People's Republic of China: Preliminary Results of Countervailing Duty Administrative Review, Rescission of Administrative Review in Part, and Intent To Rescind in Part; 2023*, 90 Fed. Reg. 30,860 (July 11, 2025) ................................................................................................................6

Plaintiff The Ancientree Cabinet Co., Ltd. ("Ancientree") files this reply in support of the remand results. *See* Pet. Opposition Remand Comments (March 10, 2026) ("Pet. Remand Cmts"), ECF 47; *see also* Remand Results (February 17, 2026); ECF 44. The Department itself requested a voluntary remand to reconsider the application of adverse facts available to determine that Ancientree benefitted from the Export Buyer's Credit ("EBC") program. On remand, the Department considered the Court's Order in the *Dalian Meisen* litigation and appropriately decided to adjust its determination and find non-use for the customers that demonstrated they did not benefit from the EBC program. Petitioner argues that these remand results are not supported by substantial evidence and are not in accordance with the law. However, Petitioner's arguments have already been rejected in the *Dalian Meisen* and should likewise been rejected here. The Court should uphold the Department's remand results.

## I.    The Department Properly took Voluntary Remand to Change its Unlawful Original Final Results.

Petitioner first essentially complains that the Department took voluntary remand, arguing that the original final results were lawful. Petitioner begins its comment with pure speculation that GOC has been "following a strategy of noncooperation" that is supposedly succeeding in many CIT appeals. Pet. Remand Cmts at 2-3. Petitioner continues that this "strategy" has shifted the burden of producing information from the GOC to the exporters' U.S. customers and that this has been onerous for Commerce to collect and verify. *Id*. This speculation ignores the reality of this program and the information the parties can provide.

First, we note that Commerce has never in the almost fifteen-year history of countervailing this program ever found actual use of this alleged program. Any finding of use of this program has always been based on AFA and not based on any actual facts of an exporter or its U.S. customer using the program. Over the long history of this program, in numerous reviews

1

and investigations, the GOC has provided information that specific exporters and customers in each case were not benefitting from this program, the specific exporters in each case have provided that their customers did not use this program and continually maintained that fact can be verified with their own records.  The U.S. customers of these exporters in these cases have certified that they did not benefit from this program.  Then, in several cases including this one, the customers even went a step further and provided information from their own financial statements to further confirm their non-use statements.  In the immense breadth of information over these fifteen years, no customer or exporter in any case has ever been found to use this program.

Petitioner's hypothesis that GOC is implementing some "strategy" is an aside and avoids the inconvenient fact that years of collected information that in some cases was verified show that customers are simply not using this program.  Indeed, given the information provided by GOC on the scope of the EBC program, it makes sense that exports to the United States of wooden cabinets and other commodities are not the type of goods that could make use of the EBC program.  *Yama Ribbons & Bows Co. v. United States*, 2023 Ct. Intl. Trade LEXIS 129, *28-29 (discussing that even if there were internal guidance changes to the program that are not on the record, it is speculative to presume that the modifications would be so substantive as to remove the USD 2 million contract or change that the exporter would know if the program was used).

Further, petitioner's speculation ignores the information that has been provided by the GOC and Ancientree.  The GOC explained that the exporter must be aware of any use of this program in any case because the Chinese exporter would be involved in the loan evaluation proceeding and in particular in the post-lending loan management.  GOC Initial Questionnaire

2

Response (October 19, 2023) at 147-157 (detailing that the Customer, i.e. Ancientree, would need to submit information to benefit from this program and would obtain money directly from the China Ex-Im Bank) and Exhibit III-B11.2; CR12-28 PR90-115; *see also* GOC Supp Questionnaire (February 27, 2024) at 28-30 and Exhibit III.B11,.4 CR104-131 PR167-172.  The GOC also submitted printouts of searches in China EX-IM Bank's database of Ancientree's customers' names, showing no entries.  *See* Exhibit III.B11.4.  The GOC also explained that it tried to obtain the 2013 Administrative Measure from the Ex-Im Bank, but the Ex-Im Bank would not provide it because it is internal to the bank, non-public, and not available for release. *Id*. at 29.  The GOC does not have a "strategy" to avoid full cooperation; rather the GOC has provided all of the information available to it.

Petitioner also dismisses the evidence put forward by Ancientree and its customers.  In its Section III response, Ancientree responded that it has never applied for any EBC loans for itself or its customers, and Ancientree also provided sworn customer declarations of non-use from every single customer Ancientree sold to during the POR.  *See* Ancientree Section III Response at 19-20, Exhibit 13 (October 19, 2023); CR41-51 PR116.  Ancientree also explained, like the GOC explained, that the exporter - in this case, Ancientree itself - must be aware of such loan as they would be involved in the loan evaluation and management.  *Id*.  We submit that this information establishes sufficiently that no Ancientree customer used the EBC loan at all.  A majority of the customers also took a further step and responded to the Department's supplemental questionnaire, providing confirmation of their non-use declarations with detailed financial and loan information.  Despite the confidential and burdensome nature of this information for many small U.S. customers, Ancientree was able to obtain cooperation from more than half of its customers.  *See* Ancientree EBC Qre (February 29, 2024), CR132-137

3

PR173.

Rather than confront this substantial information, petitioner repeats that the GOC failed to provide information so AFA is appropriate.  Pet. Remand Cmts at 4-5.  While there is case law allowing the Department to apply AFA to a respondent due to the GOC's lack of cooperation, the case law also cautions the Department in this when the Respondent itself is cooperative. *Archer Daniels Midland Co. v. United States*, 917 F. Supp. 2d 1331, 1342 (Ct. Int'l Trade 2013) (noting that Commerce should "seek to avoid" adversely impacting a cooperating party); *Jiangsu Zhongji Lamination Materials Co. v. United States*, 405 F. Supp. 3d 1317, 1333-34 (Ct. Int'l Trade 2019) (The Court instructed the Department to "consider what information could be verified that would show non-use" and emphasized that "effort should be made to avoid the collateral consequences to cooperating parties of another's non-cooperation.").  Further, the substantial evidence standard requires the Department to consider all information on the record. Thus, if the Respondents can fill the supposed gap left by the GOC, then this information must be considered.  The Court has considered this combination of factors with the EBC program several times, finding the application of AFA to the EBC program under such circumstances was not supported by the record or law.  For example, in the investigation appeal of this same Order, this Court reminded the Department:

> The focus of subsection (b) is respondent's *failure to cooperate to the best of its ability,* not its failure to provide requested information." (alteration in original)). Importantly, the use of facts available generally requires a finding of missing information. The application of an adverse inference is based on a respondent's efforts to comply with Commerce's requests for information. The purpose of the application of adverse facts available is to encourage respondents to comply with Commerce's requests…
>
> Under such circumstances, the Federal Circuit has upheld the use of adverse facts available even where it may adversely impact a cooperating party, *e.g.*, respondents that have cooperated with Commerce's requests for information. *See*

4

*id.* at 1371-73 (citing *KYD, Inc. v. United States*, 607 F.3d 760 (Fed. Cir. 2010)).This Court and the Federal Circuit have stated, though, that "Commerce should seek to avoid such impact if relevant information exists elsewhere on the record."

*Dalian Meisen Woodworking Co. v. United States*, 2022 Ct. Intl. Trade LEXIS 52, *17; *citing Jilin Forest Indus. Jinqiao Flooring Grp. Co. v. United States*, 519 F. Supp. 3d 1224, 1239-40 (Ct. Int'l Trade 2021), *Archer Daniels Midland Co. v. United States*, 917 F. Supp. 2d 1331, 1342 (Ct. Int'l Trade 2013), *Fine Furniture (Shanghai) Ltd. v. United States*, 748 F.3d 1365, 1372 (Fed. Circuit 2014).

Lastly, we note that petitioner's arguments are completely contradicted by the Department's findings and new practice in the last year with respect to the EBC program.  The Department's position now is that it does not need any information from the GOC to find non-use, but rather can verify non-use with the exporter.  For example in *2-4- Dichlorophenoxyacetic Acid*, the Department explained:

> Thus, while the credit would appear as a loan or debt obligation in the books and records of the U.S. customer, it would also appear as a disbursement or payment in the books and records of the Chinese respondent/exporter. When the funds are disbursed to the exporter's account, the disbursement is identified as payment for the shipment.  Therefore, usage of the program by a respondent's U.S. customers would be indicated by either the existence of an EXIM Bank account in the respondent's chart of accounts, trial balance, or general ledger, or by the disbursement of funds by the EXIM Bank to the respondent as payment for shipments to U.S. customers.
> …
> As a result, we find that Commerce can verify non-usage of the program with the respondents themselves. In the case of Tianyu, Commerce was able to verify that the respondent did not use the program. Commerce's non-use findings are specific to Tianyu based on the respondent's questionnaire responses and verification.

*2,4-Dichlorophenoxyacetic Acid From the People's Republic of China: Final Affirmative Countervailing Duty Determination*, 90 Fed. Reg. 14,957 (April 7, 2025) and accompanying IDM at Comment 5; *see also Certain Brake Drums From the People's Republic of China: Final*

5

*Affirmative Countervailing Duy Determination,* 90 Fed. Reg. 26,002 (June 18, 2025) and accompanying IDM at Comment 4. ("Given the information above, Commerce determines that usage of the EBCP can be determined through the books and records of a cooperative respondent..."); *Wooden Cabinets and Vanities and Components Thereof From the People's Republic of China: Preliminary Results of Countervailing Duty Administrative Review, Rescission of Administrative Review in Part, and Intent To Rescind in Part; 2023*, 90 Fed. Reg. 30,860 (July 11, 2025) and accompanying Decision Memorandum at 32 ("Therefore, based on our current understanding of the EBC program as verified in *2,4-D from China*, the respondents {including Ancientree} have substantiated that they did not use the program during the POR.") (unchanged in final).

Accordingly, the Department's remand results finding non-use of this program is supported by this specific record, caselaw, and the Department's recent[1] practice.

**II.    The Department's Remand Results are Supported by the Record and In Accordance with the Law.**

Petitioner next argues that customer-specific rates have no basis in the statute or regulation.  Pet. Remand Cmts at 9-10.  Petitioner argues that the statute directs the Department to calculate one individual subsidy rate for each exporter and producer.  19 U.S.C. § 1671d(c)(1)(B)(i)(I).  The companion provision in the antidumping statute, while not using the same "one individual" rate language, similarly directs the Department to determine "the estimate weighted average dumping margin for each exporter and producer individually investigated."  19

---

[1] In fact, if the Department had followed its practice for the last year in this case, the Department would have found non-use for all of Ancientree's customers based on Ancientree's own books and records without needing any information from the customers directly.

U.S.C. § 1673d(c)(1)(B)(i)(I).  Yet, the Department has a practice in antidumping cases is to calculate assessment rates by importer or customer.

Petitioner also argues that the countervailing regulation does not specifically allow for this, but the regulation likewise does not bar the Department from this approach.  The countervailing regulation states that the Department "normally" will direct CBP to assess the countervailing duties in the final results.  19 C.F.R. §351.212(b)(2).  The statute and regulation do not prevent the Department from calculating importer or customer specific assessment rates. The practice is normal in antidumping reviews. Petitioner provides no actual reason why importer or customer specific assessment rates would be inaccurate or non-administrable.  In fact, such specific assessment rates would be the most reasonable and accurate solution for this unusual case.  The Court upheld this approach in *Dalian Meisen*.  *Dalian Meisen Woodworking Co., Ltd. v. United States*, 788 F. Supp. 3d 1354 (Dep't Comm. 2025).

Nonetheless, if the Court determines for any reason that it was not permissible to calculate customer specific assessment rates, then any single assessment rate must still be in accordance with the law.  At a minimum, it is unlawful for Commerce to apply an EBC rate to those customers that provided answers to the EBC supplemental questionnaire.  The Department cannot use "facts otherwise available" under 19 U.S.C. § 1677e(a) or apply adverse inference under § 1677e(b) because necessary information is not missing from the record for those customers.  *See Diamond Sawblades Mfrs. Coalition v. United States*, 986 F.3d 1351, 1366-1367 (Fed. Cir. 2021) (finding the Department's application of AFA to the entire sales database was not supported by substantial evidence when the missing information only involved 2.5% of the sales.); *see also Diamond Sawblades Manufacturers' Coalition v. United States*, 547 F. Supp. 3d

1323 (Ct Int'l Trade 2021) (Upholding the Department's application of AFA to only the 2.5% of

the sales).

### III.      Conclusion and Prayer for Relief

In light of the foregoing, the Court should uphold the Department's *Remand Results* as

supported by substantial evidence and in accordance with the law.

Respectfully submitted,

 /s/ Gregory S. Menegaz

Gregory S. Menegaz
Alexandra H. Salzman
Vivien Jinghui Wang[*]
**THE INTER-GLOBAL TRADE LAW GROUP, PLLC**
Suite 1101
1156 Fifteenth Street, N.W.  20005
Tel: (202) 868-0300
email:  gmenegaz@igtlaw.com

Date: April 20, 2026                       *Counsel to Plaintiff*

---

[*] Admitted to New Mexico Bar; practice limited to Federal International Trade Matters pursuant to D.C. Bar Rule 49(c)(2).

8

**Word Count Certificate of Compliance**

This brief has been prepared utilizing Microsoft Word 2007 using a proportionally spaced typeface (12 point Times New Roman font).

In accordance with this Court's Scheduling Order and the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that his brief complies with the word limitations set forth.  Specifically, excluding those exempted portions of the brief, as set forth in 2 B (1) of the Chambers Procedures, I hereby certify that this brief contains **2,281** words. In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

/s/ Gregory S. Menegaz

Gregory S. Menegaz
**THE INTER-GLOBAL TRADE LAW GROUP, PLLC**
Suite 1101
1156 Fifteenth Street, N.W.  20005
Tel: (202) 868-0300
email:  gmenegaz@igtlaw.com
*Counsel to Plaintiff*

1