**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:    THE HONORABLE RICHARD K. EATON, SENIOR JUDGE

| | |
|---|---|
| THE ANCIENTREE CABINET CO., LTD,<br><br>      Plaintiff,<br> and<br><br>CRAFT33 PRODUCTS, LLC.<br><br>      Consolidated Plaintiff,<br>   v.<br><br>UNITED STATES,<br><br>      Defendant,<br><br> and<br><br>AMERICAN KITCHEN CABINET ALLIANCE<br><br>      Defendant-Intervenor. | Consol. Court No. 24-00223 |

**<u>ORDER</u>**

Upon consideration of defendant-intervenor's comments regarding the remand redetermination, defendant's responses thereto, and all other pertinent papers, it is hereby

ORDERED that the remand redetermination is sustained in its entirety and judgment is entered in favor of the United States.


Dated: _____, 2026       _____

  New York, NY             JUDGE

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE RICHARD K. EATON, JUDGE

| | |
|---|---|
| THE ANCIENTREE CABINET CO., LTD, )<br><br>Plaintiff, )<br>and )<br><br>CRAFT33 PRODUCTS, LLC. )<br><br>Consolidated Plaintiff, )<br>v. )<br><br>UNITED STATES, )<br><br>Defendant, )<br><br>and )<br><br>AMERICAN KITCHEN CABINET ALLIANCE )<br><br>Defendant-Intervenor. ) | Consol. Court No. 24-00223<br><br>PUBLIC DOCUMENT |

---

**DEFENDANT'S COMMENTS IN SUPPORT OF REMAND REDETERMINATION**

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

Of Counsel:                                     TARA K. HOGAN
SAMUIL AGRANOVICH                  Assistant Director
Attorney                                           Commercial Litigation Branch
Department of Commerce              U.S. Department of Justice
Office of Chief Counsel for Trade   Civil Division
Enforcement & Compliance           P.O. Box 480, Ben Franklin Station
1401 Constitution Avenue, NW       Washington, D.C. 20044
Washington, DC 20230                   Tele: (202) 616-2228
                                                        Email: tara.hogan@usdoj.gov

April 20, 2026                                  Attorneys for Defendant

**TABLE OF CONTENTS**

BACKGROUND ...............................................................................................................2

    I.     The Administrative Review ...............................................................................2

    II.    Commerce's Final Remand Redetermination ...................................................6

ARGUMENT ..................................................................................................................8

    I.     Standard of Review...........................................................................................8

    II.    Commerce's Decision To Recalculate Ancientree's Benefit Under the Export Buyer's Credit Program Complied with the Court's Order and Is Supported by Substantial Evidence and in Accordance with Law..................................................9

    III.   Commerce's Use of Retrospective Customer-Specific Liquidation Rates Is Supported by Substantial Evidence and in Accordance with Law ........................12

CONCLUSION...............................................................................................................14

## TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Assan Aluminyum Sanayi ve Ticaret A.S. v. United States*,
   624 F. Supp. 3d 1343 (Ct. Int'l Trade 2023).................................................................. 11

*Baroque Timber Indus. (Zhongshan) Co. v. United States*,
   776 F. Supp. 3d 1290 (Ct. Int'l Trade 2025).................................................................. 10

*Both-Well (Taizhou) Steel Fittings, Co., Ltd. v. United States*,
   557 F. Supp. 3d 1327 (Ct. Int'l Trade 2022).................................................................. 10

*Consolidated Edison v. NLRB*,
   305 U.S. 197 (1938)........................................................................................................ 8

*Consolo v. Fed. Mar. Comm'n*,
   383 U.S. 607 (1996)........................................................................................................ 8

*Dalian Meisen Woodworking Co., Ltd. v. United States*,
   719 F. Supp. 3d 1322 (Ct. Int'l Trade 2024)....................................................... 7, 8, 11

*Dalian Meisen Woodworking Co., Ltd. v. United States*,
   788 F. Supp. 3d 1354 (Ct. Int'l Trade 2025)....................................................... 7, 8, 13

*Fine Furniture (Shanghai) Ltd. v. United States*,
   36 CIT 1206 (Ct. Int'l Trade 2012), *aff'd* 748 F.3d 1365 (Fed. Cir. 2014) ................. 9

*GPX Int'l Tire Corp. v. United States*,
   37 CIT 19 (Ct. Int'l Trade 2013), *aff'd* 780 F.3d 1136 (Fed. Cir. 2015) ................... 9

*Guizhou Tyre v. United States*,
   348 F. Supp. 3d 1261 (Ct. Int'l Trade 2018)............................................................... 11

*Jiangsu Zhongji Lamination Materials Co., Ltd v. United States*,
   405. F. Supp. 3d 1317 (Ct. Int'l Trade 2019).............................................................. 10

*Koyo Seiko Co., Ltd. v. United States*,
   258 F.3d 1340 (Fed. Cir. 2001)................................................................................... 14

*Loper Bright Enterprises v. Raimondo*,
   144 S. Ct. 2244 (2024)............................................................................................ 12, 14

*MacLean-Fogg Co. v. United States*,
   100 F. Supp. 3d 1349 (Ct. Int'l Trade 2015)................................................................. 8

*Oman Fasteners, LLC v. United States*,
125 F.4th 1068 (Fed. Cir. 2025) ................................................................................. 12

*Thai Pineapple Canning Indus. Corp. v. United States*,
273 F.3d 1077 (Fed. Cir. 2001) ................................................................................. 13

*The Ancientree Cabinet Co., LTD., et. al. v. United States*,
Consol. Court No. 24-00223 (September 30, 2025) ................................................... 1

*United States v. Eurodif S.A.*,
555 U.S. 305 (2009) ................................................................................................... 13

*Yama Ribbons & Bows Co., Ltd. v. United States*,
611 F. Supp. 3d 1394 (Ct. Int'l Trade 2022) ............................................................. 11

*Yangzhou Bestpak Gifts & Crafts Co., Ltd. v. United States*,
716 F.3d 1370 (Fed. Cir. 2013) ................................................................................. 13

*Zhaoyuan Junbang Trading Co. v. United States*,
Slip op. 26-16, 2026 WL 464688 (Ct. Int'l Trade Feb. 18, 2026) ............................ 11

*Zhejiang Junyue Standard Part Co., Ltd. v. United States*,
578 F. Supp. 3d 1280 (Ct. Int'l Trade 2022) ............................................................. 10

**Statutes**

19 U.S.C. § 1671e(a) .............................................................................................. 13, 14

19 U.S.C. § 1675(a) ........................................................................................... 12, 13, 14

19 U.S.C. § 1677e(a) .................................................................................................... 4

19 U.S.C. § 1677e(b) ................................................................................................ 4, 12

19 U.S.C. § 1677f-1 ..................................................................................................... 13

19 U.S.C. § 1677f-1(c) ................................................................................................. 12

19 U.S.C. § 1677f-1(e) ................................................................................................. 12

19 U.S.C § 1677(5) ....................................................................................................... 4

19 U.S.C § 1677(5A) ..................................................................................................... 4

iii

**Regulations**

19 C.F.R. § 351.212(b).............................................................................................. 12


**Administrative Determinations**

*Initiation of Antidumping and Countervailing Duty Administrative Reviews,*
    88 Fed. Reg. 38,021 (Dep't of Commerce June 12, 2023) ......................................... 2

*Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China:*
    *Final Results of Countervailing Duty Administrative Review; 2022,*
    89 Fed. Reg. 88,962 (Dep't of Commerce Nov. 12, 2024)......................................... 2

*Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China:*
    *Preliminary Results and Partial Rescission of Countervailing Duty Administrative Review;*
    *2022,*
    89 Fed. Reg. 35,782 (Dep't of Commerce May 2, 2024) ........................................... 4

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE RICHARD K. EATON, JUDGE

| | |
|---|---|
| THE ANCIENTREE CABINET CO., LTD, | ) |
| Plaintiff, | ) |
| and | ) |
| CRAFT33 PRODUCTS, LLC. | ) |
| Consolidated Plaintiff, | ) |
| v. | )    Consol. Court No. 24-00223 |
| UNITED STATES, | )    PUBLIC DOCUMENT |
| Defendant | ) |
| and | ) |
| AMERICAN KITCHEN CABINET ALLIANCE | ) |
| Defendant-Intervenor. | ) |

**DEFENDANT'S COMMENTS IN SUPPORT OF REMAND REDETERMINATION**

Defendant, the United States, respectfully submits this response to American Kitchen Cabinet Alliance's (AKCA) comments concerning the Department of Commerce's final remand redetermination, ECF No. 47 (AKCA Comments), filed in accordance with this Court's order in *The Ancientree Cabinet Co., LTD., et. al. v. United States*, Consol. Court No. 24-00223 (September 30, 2025) (*Remand Order*) (ECF No. 37). *See* Final Results of Redetermination Pursuant to Court Remand, dated February 17, 2026, ECF No. 43-44 (Final Remand Results). For the reasons described below, we respectfully request that the Court sustain the remand results and enter judgment for the United States.

1

# BACKGROUND

The administrative determination under review is the final results of the administrative review of the countervailing duty order covering wooden cabinets and vanities and components thereof from the People's Republic of China for the period of review of January 1- December 31, 2022.  *See Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: Final Results of Countervailing Duty Administrative Review; 2022*, 89 Fed. Reg. 88,962 (Dep't of Commerce Nov. 12, 2024) (P.R. 340) (*Final Results*), and accompanying Issues and Decision Memorandum (P.R. 336) (IDM).[1]

## I.    The Administrative Review

On June 12, 2023, Commerce initiated an administrative review of the countervailing duty order covering wooden cabinets and vanities and components thereof from China for 42 producers and exporters of the subject merchandise for the period of review.  *Initiation of Antidumping and Countervailing Duty Administrative Reviews,* 88 Fed. Reg. 38,021 (Dep't of Commerce June 12, 2023) (P.R. 28).  Commerce selected The Ancientree Cabinet Co. Ltd. (Ancientree) and Yixing Pengjia Cabinetry Co., Ltd. (Pengjia) as the mandatory respondents. *See* First Respondent Selection Memorandum (Aug. 16, 2023) (P.R. 49, C.R. 7); *see also* Fourth Respondent Selection Memorandum (Nov. 13, 2023) (P.R. 123, C.R. 76).

Commerce issued the initial questionnaire to the Government of China (GOC) and informed the GOC that it was responsible for forwarding the questionnaire to the mandatory respondents.  *See* Aug. 24, 2023 Initial Questionnaire (Aug. 24, 2023) (P.R. 66); *see also* Nov. 13, 2023 Initial Questionnaire (Nov. 13, 2023) (P.R. 124).  Between September 7, 2023, and

---

[1]  Record citations with P.R./C.R. designate citation to the initially filed administrative record index, *see* ECF No. 16, and P.R.R./C.R.R. designate citation to the remand record index. *See* ECF No. 46.

January 4, 2024, the GOC, Ancientree, and Pengjia submitted timely responses to the initial questionnaire. *See* GOC's Oct. 19, 2023 IQR (Oct. 19, 2023) (P.R. 90, C.R. 12); *see also* GOC's Jan. 4, 2024 QR (Jan. 4, 2024) (P.R. 140 C.R. 81); Ancientree's Oct. 19, 2023 IQR (Oct. 19, 2023) (P.R. 116, C.R. 41); and Pengjia's Nov. 27, 2023 IQR (Nov. 27, 2023) (P.R. 130, C.R. 77).

In its responses, the GOC declined to provide certain information regarding the Export Buyer's Credit Program (EBCP) needed to analyze financial contribution and specificity. Specifically, the GOC was unresponsive to the majority of Commerce's questions about the use and operation of the program. *See* GOC's Oct. 19, 2023 IQR at 20; *see also* GOC's Jan. 4, 2024 IQR at 122-33. It also failed to provide information, such as all laws, regulations or governing documents, including the Administrative Measures regarding the program in 2013 and a list of partner/correspondent banks in its initial or supplemental questionnaire responses. *See* GOC's Oct. 19, 2023 IQR at 20; *see also* GOC's Feb. 27, 2024 QR (Feb. 27, 2024) (P.R. 167 C.R. 104) at 29-30.

In their initial questionnaire responses, Ancientree and Pengjia claimed that none of their U.S. customers used the EBCP and provided non-use certifications for each of their respective U.S. customers. *See* Ancientree's Oct. 19, 2023 IQR at 19 and Exhibit 15 (C.R. 50). Due to the receipt of the non-use certifications for all U.S. customers, Commerce issued EBCP supplemental questionnaires to the mandatory respondents, requesting additional information regarding their U.S. customers' financing activities. *See* Jan. 29, 2024 EBCP Questionnaire (Jan. 24, 2024) (P.R. 145, C.R. 96); *see also* Jan. 31 2024 EBCP Questionnaire (Jan. 31, 2024) (P.R. 146, C.R. 97). While Pengjia provided complete information for its U.S. customer, Ancientree was only able to provide complete information for some of its customers. *See* Ancientree's Feb. 29, 2024 EBC SQR (Feb. 29, 2024) (P.R. 173, C.R. 132-37); *see also* Pengjia's Feb. 14, 2024

3

EBC SQR (Feb. 14, 2024) (P.R. 156 C.R. 101); and Pengjia's Feb. 22, 2024 EBC SQR (Feb. 22, 2024) (P.R. 165 C.R. 103).

In the preliminary results, Commerce found that the GOC did not provide information needed to analyze the program and, therefore, the GOC had failed to cooperate by not acting to the best of its ability in response to Commerce's requests for information, within the meaning of 19 U.S.C. § 1677e(a) and (b). *See Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: Preliminary Results and Partial Rescission of Countervailing Duty Administrative Review; 2022*, 89 Fed. Reg. 35,782 (Dep't of Commerce May 2, 2024) (*Preliminary Results*) (P.R. 303), and accompanying Preliminary Decision Memorandum (PDM) (P.R. 294) at 17. As a result, Commerce used adverse facts available (AFA) to find that the loans provided through the EBCP constituted a financial contribution under 19 U.S.C § 1677(5)(B)(i) and 1677(5)(D)(i), and that the receipt of the EBCP loans was specific pursuant to sections 19 U.S.C § 1677(5A)(A)-(B). *See* PDM at 18.

With respect to the EBCP benefit, Commerce found that without full questionnaire responses regarding financing activities from each of Ancientree's U.S. customers, Commerce was unable to determine or verify whether the non-responsive U.S. customers used the EBCP. *Id.* at 19. Accordingly, because of the GOC's and Ancientree's lack of complete responses, Commerce relied upon an adverse inference to find that the EBCP was countervailable and benefited Ancientree. *Id.* Regarding Pengjia, Commerce determined that the complete information for its U.S. customer demonstrated that it had not used or benefited from the program during the period of review. *Id.*

The GOC and Ancientree timely filed administrative case briefs regarding the EBCP. *See* GOC's Case Brief (June 3, 2024) (P.R. 315); *see also* Ancientree's Case Brief (June 3, 2024)

(P.R. 316, C.R. 177). Further, Craft33 Products, LLC (Craft33), a U.S. customer and importer of subject merchandise from Ancientree during the period of review, timely filed a letter supporting the views expressed by Ancientree in its case brief. *See* Craft33's Letter (June 3, 2024) (P.R. 313). The AKCA (the petitioner) and Masterbrand Cabinets, Inc. (Masterbrand) filed rebuttal briefs regarding this program. *See* AKCA's Rebuttal Brief (June 10, 2024) (P.R. 320 C.R. 179); *see also* Masterbrand's Rebuttal Brief (June 10, 2024) (P.R. 321, C.R. 180).

In its administrative case brief, the GOC argued that Commerce unlawfully relied on AFA to find that the EBCP provided a financial contribution and was specific and that record information demonstrated that the respondents did not use the program. *See* GOC's Case Brief at 7-11. Specifically, the GOC claimed that: (1) other record information (*e.g.*, screenshots from China Export-Import Bank system) were sufficient to demonstrate the respondents' non-use of the program; (2) it acted to the best of its ability to provide all information regarding the program; and (3) the respondents provided sufficient information in their questionnaire and supplemental questionnaire responses to demonstrate non-use of the program. *Id*. Ancientree and Craft33 raised similar arguments. *See* Ancientree's Case Brief at 4-8; *see also* Craft33's Letter at 1-2. Ancientree explained that it never applied for or received benefits under the EBCP and that the information provided by the GOC corroborated its statement. *See* Ancientree's Case Brief at 4-7. Further, Ancientree claimed that the information provided by over half of its U.S. customers also demonstrated non-use of the program. *Id.* at 7-8. Based on this information, Ancientree requested that, in the final results, Commerce calculate customer-specific EBCP rates based on the level of cooperation by its U.S. customers in responding to the EBCP supplemental questionnaire. *Id.*

In the final results, Commerce continued to determine, based on AFA, that Ancientree used and benefited from the EBCP because the GOC and Ancientree failed to adequately respond to Commerce's requests for information about the program.  *See* IDM at 15-16.  Specifically, Commerce found that the program was used, despite certifications from Ancientree's U.S. customers claiming non-use, because the GOC failed to: (1) provide adequate explanation of the operations of the program; (2) provide the 2023 revisions to the administrative rules regulating the program (including information concerning the elimination of a two million dollar contract threshold between the respondents and their customers for participation in the EBCP); (3) provide a list of partner/correspondent banks that the GOC relies on as intermediaries in implementing the program; and because (4) Ancientree was unable to provide complete information regarding the financing activities of each of its U.S. customers.  *See* Ancientree's Oct. 19, 2023 IQR at 19 and exhibit 15; *see also* PDM at 17-19; IDM at 16.  Commerce concluded that this information was necessary to verify the respondents' claims that neither they, nor their U.S. customers, had used or benefited from the EBCP.  *See* PDM at 19; *see also* IDM at 16.  Ancientree and Craft33 challenged Commerce's finding, based on AFA, that Ancientree received benefits under the EBCP.

## II.    <u>**Commerce's Final Remand Redetermination**</u>

On September 29, 2025, the defendant requested a voluntary remand so that Commerce could "reconsider the application of facts available with an adverse inference to calculate the benefit to {Ancientree} under the Export Buyer's Credit Program."  *See* Def. Mot. for Voluntary Remand, ECF No. 36.  On September 30, 2025, the Court granted the motion.  Remand Order, ECF No. 37.

On January 23, 2026, Commerce released its draft results of remand redetermination in which Commerce recalculated Ancientree's overall subsidy rate for the EBCP by prorating the program rate by the percentage of Ancientree's sales for which Commerce did not receive loan information.  *See* Draft Results of Remand Redetermination (P.R.R. 1, C.R.R. 1) (Draft Results) at 6-8.  Commerce then stated it would effectuate this recalculated rate, if sustained by the Court, by issuing customer-specific liquidation instructions.  *Id.* at 8-9.   In its comments on the draft remand results, AKCA argued that Commerce had no valid basis to request a voluntary remand, that the draft results were not supported by substantial evidence because Commerce did not address evidence that the GOC did not cooperate to the best of its ability, and that Commerce's proposed liquidation on a customer-specific basis violates the statute.  *See* Comments on Draft Remand (P.R.R. 3) at 3-10.

On February 17, 2026, Commerce issued the final remand results.  In the final remand results, Commerce explained that the facts of this review mirror those presented in *Dalian Meisen*, where the Court found the use of adverse facts available not supported by substantial evidence when the record demonstrated non-use of the EBCP.  Final Remand Results at 13; s*ee Dalian Meisen Woodworking Co., Ltd. v. United States,* 719 F. Supp. 3d 1322 (Ct. Int'l Trade 2024) (*Dalian Meisen 2024*) (remanding Commerce to determine a customer-specific rate for each customer whose non-use of the EBCP was verified); *see also Dalian Meisen Woodworking Co., Ltd. v. United States*, 788 F. Supp. 3d 1354, 1379 (Ct. Int'l Trade 2025) (*Dalian Meisen 2025*) (sustaining Commerce's remand results).  Because Commerce applied adverse facts available to Ancientree in the administrative review when it was able to furnish the record with evidence of non-use of the EBCP for the majority of its sales, Commerce explained it had a valid legal basis to request a voluntary remand.  *See* Final Remand Results at 15.  While the GOC

failed to cooperate in the administrative review, as in *Dalian Meisen,* there existed other evidence on the record with respect to the customers of Ancientree for which Commerce successfully verified the information regarding non-use, and thus there was no gap in the record here.  Final Remand Results at 14-16; *see Dalian Meisen 2024*, 719 F. Supp. 3d at 1335-36. Commerce also explained that because the statute does not bar the assessment of countervailing duties on entries on a customer/importer-specific basis, the proposed liquidation of entries for this period of review on a customer-specific basis comports with law.  *See* Final Remand Results at 16-17; *see also Dalian Meisen 2025*, 788 F. Supp. 3d at 1381 (affirming the use of retrospective customer-specific liquidation rates).

**ARGUMENT**

### I.    Standard of Review

In remand proceedings, the Court will sustain Commerce's determinations if they are "in accordance with the remand order," are "supported by substantial evidence, and are otherwise in accordance with law."  *MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015).  Substantial evidence is such relevant evidence as a reasonable mind would accept as adequate to support the conclusion reached.  *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938).  Substantial evidence may be "less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."  *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1996).

**II.**      **Commerce's Decision To Recalculate Ancientree's Benefit Under the Export Buyer's Credit Program Complied with the Court's Order and Is Supported by Substantial Evidence and in Accordance with Law**

The Court ordered Commerce on remand to reconsider its application of adverse facts available to determine that Ancientree benefitted from the Export Buyer's Credit Program. *See Remand Order*. On remand, in compliance with the Court's order, Commerce revised Ancientree's subsidy rate for the Export Buyer's Credit Program by only assigning Ancientree a pro-rated portion of the total program rate to reflect the proportion of Ancientree's POR sales to U.S. customers that did not respond to Commerce's EBCP supplemental questionnaire. *See* Final Remand Results at 7. This recalculation of Ancientree's subsidy rate is supported by substantial evidence and is in accordance with law.

AKCA argues that Commerce was expected to apply adverse inferences against the GOC due to their failure to provide information relevant to the EBCP in the review. *See* AKCA's Comments at 4-5. While we agree that the GOC failed to cooperate in the underlying review, when gaps in the record are created due to a government's lack of cooperation, in certain circumstances Commerce has been directed to consider other evidence on the record which can fill these gaps. *See Fine Furniture (Shanghai) Ltd. v. United States*, 36 CIT 1206, 1209 (Ct. Int'l Trade 2012) ("{w}hen Commerce can independently fill in the gaps, without the requested information, FOA and adverse inferences are not appropriate"), *aff'd* 748 F.3d 1365 (Fed. Cir. 2014); *see also GPX Int'l Tire Corp. v. United States*, 37 CIT 19, 58-59 (Ct. Int'l Trade 2013) ("{w}hen Commerce has access to information on the record to fill in the gaps created by the lack of cooperation by the government… it is expected to consider such evidence"), *aff'd* 780 F.3d 1136 (Fed. Cir. 2015).

While AKCA cites cases to support the proposition that the GOC's lack of cooperation has left Commerce "without a sufficient basis… to find and confirm non-use for U.S. customers," AKCA avoids the holdings of these cases.  *See* AKCA's Comments at 5 (citing *Both-Well (Taizhou) Steel Fittings, Co., Ltd. v. United States*, 557 F. Supp. 3d 1327, 1336 (Ct. Int'l Trade 2022); *Zhejiang Junyue Standard Part Co., Ltd. v. United States*, 578 F. Supp. 3d 1280, 1286 (Ct. Int'l Trade 2022)).  In *Taizhou*, the Court remanded Commerce, holding that "if Commerce wishes to continue using facts available with an adverse inference, it must attempt to verify the non-use certifications," 557 F. Supp. 3d. at 1336.  That is precisely what Commerce did in this review.  *See* PDM at 19.  In *Zhejiang*, the Court also remanded on the basis that Commerce did not attempt to verify the information provided regarding non-use.  *See Zhejiang*, 578 F. Supp. 3d at 1294.  Here, Commerce received verifiable responses to the ECBP supplemental questionnaire that evidenced non-use of the EBCP for the majority of Ancientree's customers.  There exists, therefore, information on the record that partially fills the gap left by the GOC's non-cooperation.  *See* Final Remand Results at 15.

As AKCA notes, Commerce may apply AFA to a cooperative respondent if Commerce, for example, "shows that only {information withheld by the GOC} can fill the gap {in the record} by explaining the reason that other information, on the record or accessible by respondents, is insufficient or impossible to verify."  *See* AKCA's Comments at 5-6;[2] *see also Jiangsu Zhongji Lamination Materials Co., Ltd v. United States*, 405. F. Supp. 3d 1317, 1333 (Ct. Int'l Trade 2019).  Because the gap created by the GOC can sufficiently be filled with other information on the record, Commerce appropriately determined not to apply an adverse inference

---

[2]  The case which AKCA cites does not have this quotation, which is originally from *Zhongji*.  *See Baroque Timber Indus. (Zhongshan) Co. v. United States*, 776 F. Supp. 3d 1290, 1311-12 (Ct. Int'l Trade 2025).

10

to Ancientree.  Neither case to which AKCA cites supports its argument that alternative information provided by respondent companies cannot fill the gaps created by the GOC.  *See* AKCA's Comments at 6-7 (citing *Yama Ribbons & Bows Co., Ltd. v. United States*, 611 F. Supp. 3d 1394 (Ct. Int'l Trade 2022); *Zhaoyuan Junbang Trading Co. v. United States*, Slip op. 26-16, Ct. No. 24-00180, 2026 WL 464688 (Ct. Int'l Trade Feb. 18, 2026)).  In *Yama Ribbons* and *Zhaoyuan*, the respondents provided non-use certifications, and only for some of their customers. *See Yama Ribbons*, 611 F. Supp. 3d at 1400-01; *see also Zhaoyuan*, 24-00180, 2026 WL 464688 at *7.  In fact, contrary to AKCA's assertion, Commerce explained in *Zhaoyuan* that if a respondent provides a complete set of customer non-use certifications, "it may be possible for Commerce to verify non-use of the Export Buyer's Credit Program by undertaking additional steps and communications with that party." *Zhaoyuan*, 24-00180, 2026 WL 464688 at *7. Furthermore, even though Commerce is permitted to draw adverse inferences against a non-cooperating party that have collateral consequences for a cooperating party, Commerce appropriately limits the collateral impact on respondents to the extent practicable.  *See* Final Remand Results at 16; *see also Guizhou Tyre Co. v. United States*, 348 F. Supp. 3d 1261, 1271 (Ct. Int'l Trade 2018).  Commerce appropriately declined to apply an adverse inference that Ancientree benefited from the EBCP for all its customers due to the verifiable record evidence provided to the contrary. *See Dalian Meisen 2024,* 719 F. Supp. 3d at 1332.

AKCA also argues that the final remand results are unlawful because the results "ignore{} the fact that the GOC failed to provide necessary information."  AKCA Comments at 8 (citing *Assan Alüminyum Sanayi ve Ticaret A.Ş. v. United States*, 624 F. Supp. 3d 1343, 1376-1378 (Ct. Int'l Trade 2023)).  AKCA's contention is false, however, as Commerce continues to apply AFA to the GOC by continuing to find use of the EBCP for the percentage of sales which

11

Ancientree was unable to provide verifiable loan information for.  *See* Final Remand Results at 7.  While AKCA is correct that the purpose of 19 U.S.C. § 1677e(b) is to encourage future cooperation be ensuring uncooperative parties do not obtain more favorable results than they would have received had they cooperated, the rates which Commerce determines using adverse inferences must still "pursue accuracy."  *See Oman Fasteners, LLC v. United States*, 125 F.4th 1068, 1086-87 (Fed. Cir. 2025).  Thus, Commerce had a valid legal basis to request a remand, and the final remand results which followed are supported by substantial evidence and are in accordance with law.

### III.    Commerce's Use of Retrospective Customer-Specific Liquidation Rates Is Supported by Substantial Evidence and in Accordance with Law

AKCA argues that applying customer-specific liquidation rates on a purely retrospective basis violates the statute.  *See* AKCA's Comments at 9-12 (citing *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2266 (2024)).  AKCA relies on 19 U.S.C. § 1677f-1(e)(1)'s directive that Commerce "shall determine an *individual* countervailable subsidy rate for each known exporter or producer of the subject merchandise" and that under 19 U.S.C. § 1675(a)(2)(C) these individual rates "shall be the basis for the assessment of countervailing… duties on entries of merchandise."  AKCA Comments at 9.  What AKCA fails to acknowledge, however, is that this exact statutory language is also used in 19 U.S.C. § 1677f-1(c)(1) for the determination of dumping margins, which Commerce implements through importer-specific dumping margins.  *See* 19 C.F.R. § 351.212(b)(1).  Because both 19 U.S.C. § 1677f-1(c)(1) and 1677f-1(e)(1) use the same language, and it is Commerce's regular practice to calculate dumping margin assessment rates for each importer, the best interpretation of the 19 U.S.C. § 1677f-1(e)(1) would also permit Commerce to calculate importer-specific subsidy assessment rates.  19 C.F.R. § 351.212(b)(2) states that Commerce "*normally* will instruct U.S. Customs and Border Protection

12

to assess countervailing duties by applying the rates included in the final results of the review to the entered value of the merchandise" (emphasis added), which provides more discretion to Commerce than 19 U.S.C. § 1677f-1's use of the word "shall."

When various methodologies are permitted by the statute, "it is possible for the application of a particular methodology to be unreasonable in a given case." *Yangzhou Bestpak Gifts & Crafts Co., Ltd. v. United States,* 716 F.3d 1370, 1378 (Fed. Cir. 2013) (citing *Thai Pineapple Canning Indus. Corp. v. United States,* 273 F.3d 1077, 1085 (Fed. Cir. 2001). In such cases "form should be disregarded for substance and the emphasis should be on economic reality." *See id.* (brackets omitted) (citing *United States v. Eurodif S.A.*, 555 U.S. 305, 317-18 (2009)). Because there is evidence on the record demonstrating that the economic reality is that Ancientree did not use the EBCP with respect to a sub-set of its customers, Commerce may depart from its normal practice, just as it did in *Dalian Meisen. See Dalian Meisen 2025*, 788 F. Supp. 3d at 1381 (sustaining Commerce's retroactive assessment of customer-specific liquidation rates).

AKCA further argues that the countervailing duties assessed must be assessed at a rate equal to the countervailing duty determined to exist for the relevant foreign exporter. *See* AKCA Comments at 11 (citing 19 U.S.C. § 1671e(a)(1); 19 U.S.C. § 1675(a)(2)(C)). A close examination of the statutory text reveals this is not the case. Section 1671e(a)(1) instructs Commerce to publish a countervailing duty order which will directs customs officers to "assess a countervailing duty equal to the amount of the net countervailable subsidy determined or estimated to exist." Section 1675(a)(2)(C), on the other hand, applies to administrative reviews like this proceeding. It states that the determinations in reviews "shall be the *basis* for the assessment of countervailing… duties on entries of merchandise" (emphasis added). Rather than

requiring Commerce assess a countervailing duty "equal to" the subsidy rate, as directed in 19 U.S.C. § 1671e(a)(1), the statute only requires Commerce have its determinations in administrative reviews be the "basis" for the assessment of duties.  19 U.S.C. § 1675(a)(2)(C).

Indeed, the Federal Circuit has upheld Commerce's practice of using its calculated dumping margin as only the numerator in its assessment rate formula "to comply with section 1675's requirement that the dumping margin must serve as the 'basis' for the assessment of antidumping duties."  *Koyo Seiko Co., Ltd. v. United States,* 258 F.3d 1340, 1346 (Fed. Cir. 2001).  By the same token, Commerce complies with the requirements of 19 U.S.C. § 1675(a)(2)(C) by using Ancientree's subsidy rate as the "basis" for the importer-specific assessment rates, which only deviate from Ancientree's rate by the inclusion or exclusion of the EBCP's individual subsidy rate.  While *Koyo Seiko* was decided prior to *Loper Bright*, the Supreme Court instituted a prospective rule, which did not "call into question prior cases that relied on the *Chevron* framework."  *Loper Bright*, 603 U.S. at 412.  Moreover, the Federal Circuit recognized that the statute itself does not prohibit Commerce's methodology.  *Koyo Seiko*, 258 F.3d at 1346.  Thus, Commerce's use of retrospective customer-specific liquidation rates is supported by substantial evidence and is in accordance with law.

## **CONCLUSION**

For these reasons, we respectfully request that this Court sustain Commerce's remand results and enter final judgment in favor of the United States.

14

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/Tara K. Hogan
TARA K. HOGAN

Of Counsel:                          Assistant Director
SAMUIL AGRANOVICH                    Commercial Litigation Branch
Attorney                             U.S. Department of Justice
Department of Commerce               Civil Division
Office of Chief Counsel for Trade    P.O. Box 480, Ben Franklin Station
Enforcement & Compliance             Washington, D.C. 20044
1401 Constitution Avenue, NW         Tele: (202) 616-2228
Washington, DC 20230                 Email: tara.hogan@usdoj.gov

                                     Attorneys for Defendant

April 20, 2026


**CERTIFICATE OF COMPLIANCE**

Pursuant to Standard Chambers Procedure ¶ 2(B)(2), I hereby certify that this document

contains **4,001** words, and therefore complies with the word limitation set forth in ¶ 2(B)(1)(b).

/s/Tara K. Hogan